[No. B118633. Second Dist., Div. Four. May 4, 1999.]

FILET MENU, INC., Plaintiff and Appellant, v.
WARREN CHENG, Defendant and Respondent.

**COUNSEL**

Douglas R. Holmes for Plaintiff and Appellant.

John R. Sommer for Defendant and Respondent.

**OPINION**

**CURRY, J.**—Respondent Warren Cheng demurred to the first amended complaint for breach of contract of appellant Filet Menu, Inc. (hereafter Filet Menu), contending that its claims were time-barred. The trial court sustained the demurrer, reasoning that the tolling provisions of Code of Civil Procedure section 351, as applied to the facts alleged concerning Cheng, violated the commerce clause of the federal Constitution. We reverse.

FACTS

Filet Menu's first amended complaint alleges the following facts: Filet Menu is a California corporation whose principal place of business is in California. Cheng is a resident of California, and Steve Chen resides in Bellevue, Washington. Cheng and Chen owned a business named "Cucina California."

On January 4, 1991, Cheng and Chen entered into an agreement entitled "Credit Application and Agreement" with Filet Menu.[1] On the agreement, Chen stated that his home address was in Bellevue, Washington. The

---

[1]The first amended complaint incorporates by reference this contract and several purchase orders signed by Cheng for items from Filet Menu. Because these documents are the foundation of the first amended complaint, we view the statements in these documents as allegations essential to the claims for relief. (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 390, p. 488.)

agreement provided: "If customer cancels or breaches all or any part of his pending contracts with Filet Menu, customer agrees to promptly pay a cancellation charge equaling 75% of the total remaining contract balance, which customer agrees is fair and reasonable, although Filet Menu's lost profits from these contracts, which are difficult to ascertain, may be considerably greater than 75%."

Pursuant to this agreement, Cheng, acting on behalf of Cucina California, placed orders with Filet Menu for pizza boxes, handle bags, placemats, assorted napkins, menus, and other items in June and July 1991. Shipments of these items were delivered to Cheng's and Chen's location in Vancouver, Canada. On November 30, 1991, Cheng and Chen refused to pay for the goods shipped and to accept further deliveries.

### RELEVANT PROCEDURAL HISTORY

Filet Menu initiated this action against Cheng and Chen on April 8, 1997. On July 24, 1997, Filet Menu filed a first amended complaint (hereafter complaint), asserting claims for breach of contract, alter ego liability, account stated, and quantum meruit. The complaint alleged that Cheng and Chen owed Filet Menu $18,570 for the items shipped, as well as $1,007,433 for Filet Menu's loss of profits.

The trial court sustained Cheng's demurrer to the complaint without leave to amend on October 7, 1997, and Filet Menu's action against Cheng was dismissed on October 29, 1997.

### DISCUSSION

Filet Menu contends that the trial court erred in sustaining the demurrer without leave to amend. We agree.

A. *Standard of Review*

■ "Because a demurrer both tests the legal sufficiency of the complaint and involves the trial court's discretion, an appellate court employs two separate standards of review on appeal. [Citation.] . . . Appellate courts first review the complaint de novo to determine whether or not the . . . complaint alleges facts sufficient to state a cause of action under any legal theory, [citation], or in other words, to determine whether or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]" (*Cantu* v. *Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151], fn. omitted.)

"Second, if a trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action. [Citation.]" (*Cantu* v. *Resolution Trust Corp., supra,* 4 Cal.App.4th at p. 879, fn. 9.)

Here, Filet Menu stands on the complaint as alleged, and proposes no amendments. Accordingly, the only question before us is whether the complaint, as alleged, states legally sufficient claims.

## B. *Section 351*

The key issue presented concerns the constitutional soundness of Code of Civil Procedure section 351.

Generally, actions founded upon a written contract are subject to a four-year statute of limitations (Code Civ. Proc., § 337, subd. 1), and actions in quasi-contract are subject to a two-year statute of limitations (Code Civ. Proc., § 339, subd. 1; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 480, p. 605). However, Code of Civil Procedure section 351 provides that "[i]f, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action."

Here, the complaint alleges: "Any applicable statute of limitations has been tolled as against defendants including and specifically defendant CHENG because said defendants have been out of the state for a sufficient amount of time to prevent the running of any applicable statute of limitations to and [*sic*] including the four-year statute of limitation for breach of a written contract. Defendant CHENG has been a resident of the state of California from 1991 to the present despite various absences. Therefore, Code of Civil Procedure Section 351 will toll the applicable four-year statute of limitation."

In sustaining Cheng's demurrer, the trial court concluded, on the facts as alleged, that (1) the tolling provisions of Code of Civil Procedure section 351 are constitutionally infirm under the commerce clause of the federal Constitution (art. I, § 8, cl. 3), and that (2) Filet Menu's claims against Cheng were therefore time-barred. Because Filet Menu does not dispute that its claims are untimely absent tolling, our inquiry is whether section 351 violates the commerce clause on the facts alleged in the complaint. (See *Bendix Autolite Corp.* v. *Midwesco Enterprises* (1988) 486 U.S. 888, 893

[108 S.Ct. 2218, 2221-2222, 100 L.Ed.2d 896]; *Mounts* v. *Uyeda* (1991) 227 Cal.App.3d 111, 122 [277 Cal.Rptr. 730].)

■ "The term 'commerce' as used in the commerce clause . . . means 'intercourse between nations, and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse.' [Citation.]" (*United States* v. *Hanigan* (9th Cir. 1982) 681 F.2d 1127, 1130, quoting *Gibbons* v. *Ogden* (1824) 22 U.S. (9 Wheat.) 1, 190 [6 L.Ed. 23, 68-69] [movement of undocumented Mexican laborers across national border into Arizona is commerce within meaning of the commerce clause].) Here, the complaint alleges that the underlying agreement was signed by Filet Menu and Cheng, both California residents, and Chen, a Washington state resident, and that pursuant to this agreement, goods were shipped to Vancouver, Canada. Accordingly, the complaint sufficiently alleges that the underlying transaction fell within the scope of the commerce clause.

The leading case on the soundness of tolling statutes under the commerce clause is *Bendix Autolite Corp.* v. *Midwesco Enterprises, supra*, 486 U.S. 888. In *Bendix*, Bendix Autolite Corporation, a corporation residing in Ohio, entered into an agreement with Midwesco Enterprises, Inc., a corporation residing in Illinois. (*Id.* at pp. 889-890 [108 S.Ct. at pp. 2219-2220].) When Bendix sued Midwesco for breach of contract and Midwesco asserted a statute of limitations defense, Bendix contended that the statutory period had been tolled. Like Code of Civil Procedure section 351, the pertinent Ohio tolling statute provided that the statutory period did not run while a defendant was outside of the state.[2]

■ In assessing whether this tolling statute violated the commerce clause, the court in *Bendix* stated that, as a general rule, "[w]here the burden of a state regulation falls on interstate commerce, restricting its flow in a manner not applicable to local business and trade, there may be either a discrimination that renders the regulation invalid without more, or cause to weigh and assess the State's putative interests against the interstate restraints to determine if the burden imposed is an unreasonable one. [Citation.]" (486 U.S. at p. 891 [108 S.Ct. at pp. 2220-2221].) Applying the latter balancing test, the *Bendix* court held that Ohio's tolling statute was constitutionally infirm under the circumstances of the case, noting that "[a]lthough statute of

---

[2]The tolling statute provided in pertinent part: "When a cause of action accrues against a person, if he is out of the state, has absconded, or conceals himself, the period of limitation for the commencement of the action . . . does not begin to run until he comes into the state or while he is so absconded or concealed. After the cause of action accrues if he departs from the state, absconds, or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought." (Ohio Rev. Code Ann. § 2305.15.)

limitations defenses are not a fundamental right, [citation], it is obvious that they are an integral part of the legal system and are relied upon to project the liabilities of persons and corporations active in the commercial sphere." (*Id.* at p. 893 [108 S.Ct. at pp. 2221-2222].) The *Bendix* court reasoned that the statute burdened interstate commerce by barring foreign corporations from asserting a statute of limitations defense unless they maintained a presence in Ohio, but served no weighty state interest because Ohio's long-arm statute permitted service on foreign corporations like Midwesco throughout the period of limitations. (*Id.* at pp. 893-895 [108 S.Ct. at pp. 2221-2223].)

In *Abramson* v. *Brownstein* (9th Cir. 1990) 897 F.2d 389, the Ninth Circuit decided a similar question concerning Code of Civil Procedure section 351. In *Abramson*, the plaintiffs, two California residents, entered into an agreement for the sale of gold coins and bullion with the defendant, a resident of Massachusetts. (897 F.2d at. p. 390.) The plaintiffs subsequently sued the defendant, alleging breach of contract and fraud. (*Ibid.*) When the defendant asserted a statute of limitations defense, the plaintiffs argued that the statutory periods were tolled under section 351. (897 F.2d at p. 391.) Following *Bendix*, the Ninth Circuit held that section 351 impermissibly burdened interstate commerce in the case of nonresident defendants engaged in commerce within California, reasoning that although such defendants were subject to service under California's long-arm statute, section 351 denied them a statute of limitations defense unless they maintained a presence in California.

Unlike the courts in *Bendix* and *Abramson*, we confront whether Code of Civil Procedure section 351 is constitutionally sound when its tolling provisions are applied to a resident engaged in interstate commerce. Under *Bendix*, we first assess the burden that section 351 imposes on interstate commerce in these circumstances, and then determine whether this burden is counterbalanced by state interests supporting section 351. (*Bendix Autolite Corp.* v. *Midwesco Enterprises, supra*, 486 U.S. at p. 891 [108 S.Ct. at pp. 2220-2221].) ▮ With respect to the burden imposed by section 351, we examine the extent to which section 351 restricts the flow of interstate commerce "in a manner not applicable to local business and trade" (486 U.S. at p. 891 [108 S.Ct. at p. 2220]), and thus compare the impact of section 351 on residents engaged in interstate commerce with residents not so engaged.

In our view, Code of Civil Procedure section 351 imposes a special burden on residents who travel in the course of interstate commerce that is not shared by residents involved solely in "local business and trade . . . ." (*Bendix Autolite Corp.* v. *Midwesco Enterprises, supra*, 486 U.S. at p. 891 [108 S.Ct. at p. 2220].) "[I]nterstate commerce is affected when persons

move between states in the course of or in search for employment. [Citations.]" (*Tesar* v. *Hallas* (N.D. Ohio 1990) 738 F.Supp. 240, 242.) Residents engaged in interstate commerce often travel outside the state to facilitate this activity, unlike residents who are otherwise occupied or employed. Thus, section 351 poses a hard choice to residents who engage in interstate commerce and who face potential liability arising out of this economic activity that section 351 does not pose to other residents. Residents occupied in interstate commerce must curtail their travel outside the state in the course of interstate commerce to avoid the tolling provisions of section 351, or endure extended exposure to litigation because of their travel in the course of interstate commerce. In this respect, section 351 places a special burden on residents involved in interstate commerce that it does not impose on other residents.

Furthermore, no state interest outweighs this burden. Residents are equally subject to service, regardless of their reasons for traveling out of state. In the present case, there is no allegation that Cheng's out-of-state travel made him difficult to serve with the complaint in this action. In the absence of a countervailing state interest, we conclude, under *Bendix* and *Abramson*, that Code of Civil Procedure section 351 impermissibly burdens interstate commerce with respect to residents who travel in the course of interstate commerce.

This conclusion is limited to travel for the facilitation of interstate commerce. Residents travel outside California for many reasons unrelated to the service of interstate commerce. Because the implications of Code of Civil Procedure section 351 for such travel apply equally to residents engaged in interstate commerce and to residents not so occupied, tolling statutory periods for the duration of out-of-state travel unrelated to interstate commerce does not violate the commerce clause. (*Pratali* v. *Gates* (1992) 4 Cal.App.4th 632, 635, 643 [5 Cal.Rptr.2d 733] [single amicable noncommercial loan between California residents arranged in Las Vegas and payable in San Francisco does not implicate interstate commerce, and thus applying section 351 in lawsuit arising out of loan does not violate commerce clause].)

Our conclusion finds support in *Tesar* v. *Hallas*, *supra*, 738 F.Supp. 240, and *Lovejoy* v. *Macek* (1997) 122 Ohio App.3d 558 [702 N.E.2d 457]. In *Tesar*, the federal district court concluded that the Ohio tolling statute at issue in *Bendix* violated the commerce clause in an action involving a defendant who had moved from Ohio to Pennsylvania, where he had found a new job. (*Tesar* v. *Hallas*, *supra*, 738 F.Supp. at pp. 241-243.) The court in *Tesar* reasoned that in the circumstances of that case, the tolling statute

unreasonably burdened the flow of persons "between states in the course of or in search for employment. [Citations.]" (*Id.* at p. 242.) Although the case before us does not involve a change in the state of residence, *Tesar* corroborates our conclusion that Code of Civil Procedure section 351 unreasonably impedes the movement of persons acting in the course of interstate commerce.

In *Lovejoy*, the Ohio appellate court again addressed the Ohio tolling statute, this time in a case involving a defendant who had maintained permanent residence in Ohio, but who had left the state for vacation trips and had attended college in New York state, where he was also employed as a night guard. (122 Ohio App.3d at p. 560 [702 N.E.2d at p. 458].) The court in *Lovejoy* held that under *Bendix* and its progeny, tolling the statutory period during the vacation trips did not violate the commerce clause because these trips did not rise to "acts engaging in interstate commerce . . . ."[3] (122 Ohio App.3d at p. 565 [702 N.E.2d at p. 462].) *Lovejoy* thus supports our conclusion that the commerce clause does not bar applying the tolling provisions of Code of Civil Procedure section 351 to interstate travel unrelated to the facilitation of interstate commerce.

Here, the complaint alleges that Cheng was absent from California for periods sufficient to toll the running of the applicable statutory period, but does not allege the specific reasons for Cheng's out-of-state travel. Because the allegations do not describe the extent to which Cheng's absences from the state were in the course of interstate commerce, they do not establish that applying Code of Civil Procedure section 351 in the circumstances of this case violates the commerce clause.

In sum, the demurrer was improperly sustained.

DISPOSITION

The judgment is reversed. Appellant is awarded its costs on appeal.

Epstein, Acting P. J., and Hastings, J., concurred.

---

[3]In view of this conclusion, the court in *Lovejoy* held that the plaintiff's action was not time-barred, and it therefore did not address whether applying the tolling provision to the defendant's college attendance violated the commerce clause. (122 Ohio App.3d at p. 565 [702 N.E.2d at p. 462].)