132 Cal.Rptr.2d 444 (2003)
107 Cal.App.4th 848
Nancy LEE, Plaintiff and Appellant,
v.
LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, Defendant and Respondent.
No. B155843.
Court of Appeal, Second District, Division Four.
April 4, 2003.
*446 Girardi Keese, John A. Girardi, Los Angeles, and Anthony M. Altman, Woodland Hills, for Plaintiff and Appellant.
Wasserman, Comden, Casselman & Pearson, David B. Casselman, Tarzana, and Elsa H. Jones, Los Angeles, for Defendant and Respondent.
*445 EPSTEIN, J.
The issue in this action for inverse condemnation and damage to property is when plaintiffs claims accrued. The trial court sustained the defendant's demurrer and dismissed the action based on its conclusion that the action is barred by the statute of limitations and the California Tort Claims Act (Gov.Code, § 900 et seq., "Tort Claims Act").
We conclude the trial court erred. In an action for continuous and repeated damage to real property based on inverse condemnation and nuisance, the cause of action does not accrue until the situation has stabilized. The allegations of the third amended complaint are adequate to bring those claims within the stabilization rule. Tort claim deadlines applicable to the remaining tort causes of action alleged in the complaint also run from this date of accrual. Since the allegations of the third amended complaint do not clearly and affirmatively establish that the tort causes of action are barred, we reverse the order of dismissal.

FACTUAL AND PROCEDURAL SUMMARY
We take our factual summary from the allegations of plaintiffs third amended complaint, the charging pleading. Defendant argues that plaintiff purposely omitted chronological allegations contained in the first amended complaint from the third amended, complaint in an effort to avoid the defenses of the statute of limitations and Tort Claims Act. In effect, defendant argues these earlier allegations amount to judicial admissions which plaintiff cannot avoid by omitting them from her most recent pleading. We shall assume this is so (see Owens v. Kings Supermarket (1988) 198 Cal.App.3d 379, 383-384, 243 Cal.Rptr. 627), but as we shall explain, even taking these allegations into account, the result is not changed. We therefore review pertinent allegations of both pleadings.
The plaintiff and appellant, Nancy Lee, owned real property at 5507-5509 Hollywood Boulevard in Los Angeles (the City). She claims that her property was damaged by construction of the Metro Rail Red Line underneath Hollywood Boulevard. This construction was performed under the authority of defendant and respondent Los Angeles County Metropolitan Transportation Authority (MTA). According to the allegations, in late 1992, MTA began preparing a tunnel access shaft, constructing a staging site, and relocating utilities on various segments of the Red Line on Hollywood Boulevard. Physical construction of the tunnels began in mid 1993.
In November of 1995, plaintiff observed that water had accumulated on or around her property. In December of 1995, she informed her insurance carrier of her suspicion *447 that plumbing in her building was the source of the problem. Upon inspection, it was learned that it was not plaintiffs pipes, but rather the City's water pipes that were undermining the sidewalk and Hollywood Boulevard. To plaintiffs knowledge at that point, there had been no apparent damage to her building.
The third amended complaint alleged that in 1996, plaintiff observed buckling of the sidewalks and roadbed directly in front of her property on Hollywood Boulevard. At first, she thought the damage was limited to pipes confined to city property.
According to the first amended complaint, in March 1996, plaintiff notified a city inspector about her observations, and requested the City to address the pipe problem because it was affecting her business. The drainage was causing the soil to subside and the surface (sidewalks and boulevard) to buckle. Plaintiff alleges that she contacted FEMA (the Federal Emergency Management Agency) in March 1996 about the pipe problem and was told that FEMA had ruled out earthquake as the cause. FEMA reported its findings to city inspectors in March or August 1996.[1] The inspectors referred the matter to other city agencies, which plaintiff identifies as "Public Works and the Department of Transportation and Maintenance." The City looked into the plumbing problem in August 1996.
The third amended complaint alleges that plaintiff spoke with a city building inspector on January 6, 1997, regarding settlement on her property which was damaging the sidewalk in front of the subject building. She alleged that the inspector told her agent the problem was not on plaintiffs property.
In the first amended complaint (but not in the third), plaintiff alleged the City told her, in April 1997, the damage could be MTA-related but she would have to determine this with definitive evidence. The third amended complaint alleges that, on July 25, 1997, plaintiff received geological and engineering reports from experts she had hired. "The Reports detail findings of extensive damage to Plaintiffs building at 5507-09 Hollywood Boulevard and attribute this damage to MTA's subway construction under the boulevard. Plaintiffs building was damaged when the earth supporting its foundation was removed during construction of the MTA subway, causing the building to sink six inches more on the side nearest the subway project than on the side farthest the subway [sic ]; the potential for further settlement and damage was noted." Plaintiff alleged that her engineers recommended mitigation measures, including a new foundation to a depth of at least 25 feet, topped by grade beams holding structural slabs. The allegations continue: "It was discovered that MTA tunneling had severed the City pipes leading to Plaintiffs property and the water flowing from these burst pipes combined with destabilized soil beneath Plaintiffs property to cause the building's supporting pylon to become compromised."
Plaintiff contacted the MTA's insurance adjuster in September 1997, and met with him later that month and in October 1997. The third amended complaint also includes detailed allegations regarding contacts with adjusters for the MTA's insurer beginning in December 1997. These appear to be addressed to the defense that plaintiff failed to comply with filing deadlines of the Tort Claims Act.
*448 Plaintiff filed her original complaint on May 5, 2000. In it, she named numerous defendants who are not parties to this appeal, and the MTA. The complaint alleged causes of action for inverse condemnation; private nuisance; trespass; negligence; dangerous condition of public property; liability for acts of independent contractors under Government Code section 815.4; and liability for damages from excavations on adjoining property under Civil Code section 832.
MTA demurred to the tort causes of action on the ground that plaintiff failed to allege compliance with the Tort Claims Act.[2] Over plaintiffs opposition, the trial court sustained the demurrer with leave to amend. The trial court also sustained MTA's demurrers to plaintiffs first and second amended complaints with leave to amend.
Plaintiff then filed the third amended complaint. MTA demurred to that pleading on the ground that each cause of action was time barred. It contended that the three-year statute of limitations on the cause of action for inverse condemnation expired on January 6, 2000. As to the tort causes of action, MTA argued that plaintiff filed her action nearly three years after she made a claim to MTA; plaintiffs allegation that the insurance carrier for MTA denied her tort claim was without merit; and plaintiff could not assert estoppel against MTA based on events that occurred after the deadline for compliance with the Tort Claims Act had expired.
Plaintiff did not file opposition to the demurrer to the third amended complaint and did not submit a proposed fourth amended complaint. The trial court sustained the demurrer and dismissed MTA from the action. Plaintiff filed a timely appeal from the order of dismissal.

DISCUSSION

I
"A demurrer tests the legal sufficiency of the complaint, and the granting of leave to amend involves the trial court's discretion. Therefore, an appellate court employs two separate standards of review on appeal. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; Cantu v. Resolution Trust Corp. (1992) 4 Cal.App.4th 857, 879 [6 Cal. Rptr.2d 151].)[¶] The complaint is reviewed de novo to determine whether it contains sufficient facts to state a cause of action. (Filet Menu, Inc. v. Cheng (1999) 71 Cal.App.4th 1276, 1279 [84 Cal.Rptr.2d 384].) The properly pleaded material factual allegations, together with facts that may be properly judicially noticed, are accepted as true. Reversible error exists if facts were alleged showing entitlement to relief under any possible legal theory. (Platt v. Coldwell Banker Residential Real Estate Services (1990) 217 Cal.App.3d 1439, 1444 [266 Cal.Rptr. 601].)[¶] Where a demurrer is sustained without leave to amend, the reviewing court must determine whether the trial court abused its discretion in doing so. (Cooper v. Leslie Salt Co. (1969) 70 Cal.2d 627, 636 [75 Cal.Rptr. 766, 451 P.2d 406].) It is an abuse of discretion to deny leave to amend if there is a reasonable possibility that the pleading can be cured by amendment. (Goodman v. Kennedy (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) Regardless of whether a request therefore was made, unless the complaint shows on its face that it is incapable of amendment, denial of leave to amend constitutes an abuse of discretion. (McDonald v. Superior *449 Court (1986) 180 Cal.App.3d 297, 303-304 [225 Cal.Rptr. 394].) The burden is on the plaintiff to demonstrate how he or she can amend the complaint. It is not up to the judge to figure that out. (Blank v. Kirwan, supra, 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.) Plaintiff can make this showing in the first instance to the appellate court. (Careau & Co. v. Security Pacific Business Credit, Inc. (1990) 222 Cal.App.3d 1371, 1386 [272 Cal. Rptr. 387].)" (Roman v. County of Los Angeles (2000) 85 Cal.App.4th 316, 321-322, 102 Cal.Rptr.2d 13, italics added.)

II
MTA argues the demurrer was properly sustained without leave to amend as to the cause of action for inverse condemnation because plaintiffs complaints revealed that the claim was barred by the applicable three-year* statute of limitations. (Code Civ. Proc., § 338, subd. (j); Friends of H Street v. City of Sacramento (1993) 20 Cal.App.4th 152, 167, 24 Cal.Rptr.2d 607.) In her briefing, plaintiff attempts to distinguish between her knowledge of problems affecting the sidewalk and street in front of her property, and her knowledge of damage to her property. She argues that according to the allegations of the third amended complaint, she first learned of the damage to her property on July 25, 1997, when she received geological and engineering reports from her experts. (Par. 25 of the complaint.) Both parties apparently assumed that the inverse condemnation cause of action accrued when plaintiff either knew or reasonably should have known of the damage to her property. We conclude a different rule applies.[3]
"A general demurrer based on the statute of limitations is only permissible where the dates alleged in the complaint show that the action is barred by the statute of limitations. [Citation.] The running of the statute must appear `clearly and affirmatively' from the dates alleged." (Roman v. County of Los Angeles, supra, 85 Cal.App.4th at pp. 324-325, 102 Cal. Rptr.2d 13.)
We agree with the parties that the applicable statute of limitations is Code of Civil Procedure section 338, subdivision (j), because the basis of the inverse condemnation claim is damage to the property (as opposed to taking). (See 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 556, p. 710 [Code Civ. Proc., § 338, subd. (j) codifies three-year rule stated in Smith v. City of Los Angeles (1944) 66 Cal.App.2d 562, 586, 153 P.2d 69].)
The significant issue is when plaintiffs cause of action for inverse condemnation accrued. As we shall explain, the resolution of that question informs disposition of both the statute of limitations issue and the tort claim issue. Plaintiff was not required to present a claim to MTA on her cause of action for inverse condemnation. (Gov.Code, § 905.1.) She was required to present a timely claim as to her tort causes of action (nuisance, dangerous condition, violation of Gov.Code, § 815.4). (Gov.Code, § 905.2.) The deadline for filing that claim is "not later than one year after the accrual of the cause of action." (Gov. Code, § 911.2.) The same rule governs the accrual of the inverse condemnation and particular the tort causes of action alleged against the MTA.
The leading case in the area has been and remains Pierpont Inn, Inc. v. State of California (1969) 70 Cal.2d 282, 74 Cal. Rptr. 521, 449 P.2d 737, disapproved on another ground in Los Angeles County *450 Metropolitan Transportation Authority v. Continental Development Corp. (1997) 16 Cal.4th 694, 66 Cal.Rptr.2d 630, 941 P.2d 809. We begin with a discussion of that precedent. The case arose out of state construction of a freeway over land owned by Pierpont. (Id. at p. 285, 74 Cal.Rptr. 521, 449 P.2d 737.) Grading and preparatory work began in early 1960. The freeway was opened for traffic in October 1962.
The case deals with the predecessor to the current government claims statute, former Government Code section 644, which required that a claim be presented to the State Board of Control "`within two years after the claim first arose or accrued.'" (Pierpont Inn, Inc. v. State of California, supra, 70 Cal.2d at p. 286, 74 Cal.Rptr. 521, 449 P.2d 737.) The state argued that this period began to run when it entered Pierpont's land in February 1960, or at the latest, when it began preliminary work there in March 1960. The claim was not filed until August 1962, a date more than two years from either of these dates. Because of this, the state contended a claim filed by Pierpont in August 1962 was untimely.
The Pierpont court observed: "There is a paucity of authority dealing with the problem of determining the exact date upon which a claim or cause of action for inverse condemnation arises." (Pierpont Inn, Inc. v. State of California, supra, 70 Cal.2d at p. 287, 74 Cal.Rptr. 521, 449 P.2d 737.) It noted that the state could have condemned the property, and thereby fixed a date of taking, but chose not to do so and, instead, constructed the freeway without having condemned the land. Since the state passed on the opportunity to fix the time when the property was taken by instituting an action in condemnation, it could not later urge the Pierpont claim was untimely. The reason is that Pierpont "reasonably awaited completion of the project in order to determine more accurately the exact extent to which its remaining property would be damaged." (Id at p. 293, 74 Cal.Rptr. 521, 449 P.2d 737.)
The Supreme Court concluded that the extent of the damages caused by the taking of Pierpont's land and the construction of the freeway project could be determined more accurately and more satisfactorily after the freeway was complete and in operation than it could have been from a visualization of the project from the designs. Based on that conclusion, Pierpont held that the claim filed more than two years after the work began was not untimely because it was filed prior to the completion of the portion of the project which took Pierpont's land. (Pierpont Inn, Inc. v. State of California, supra, 70 Cal.2d at p. 294, 74 Cal.Rptr. 521, 449 P.2d 737.)
Pierpont was an inverse condemnation case based on outright taking, while in Stonewall Ins. Co. v. City of Palos Verdes Estates (1996) 46 Cal.App.4th 1810, 54 Cal. Rptr.2d 176, the theory of inverse condemnation was used to show damage to the real property. The accrual issue was germane to actions between the city and its insurers regarding coverage of the settlement of an action brought by the property owners. The owners had sued the city for negligence, nuisance, and inverse condemnation, claiming that as a consequence of a continuous and repeated course of conduct by the city from 1971 to 1981, their property had been destroyed. They alleged that the city improperly designed and maintained a drainage system, leading to erosion and destruction of their property. Following an adverse judgment, the city and two of its insurers settled with the owners. The Stonewall case involved cross actions by the city and some of its *451 insurers on insurance coverage for the settlement.
Under Government Code section 911.2, the owners were required to present their claim within one year of the accrual of the cause of action. Arguing that the owners had not done so, the insurers concluded there was no derivative insurance liability for anything that occurred earlier than one year before the claim was filed. The trial court agreed. The appellate court did not. It concluded that the trial court erred in exonerating insurance carriers that issued policies to the city providing coverage only for periods in excess of one year before the owners filed their claim with the city.
The trial court ruling was erroneous because "[i]t ignores authority establishing that in a context such as presented here (one involving continuous and repeated damage incident to a public improvement), the limitations period does not begin to run until the situation has stabilized. (Pierpont Inn, Inc. v. State of California/, supra,] (1969) 70 Cal.2d 282, 291-294 [74 Cal.Rptr. 521, 449 P.2d 737]....)" (Stonewall Ins. Co. v. City of Palos Verdes Estates, supra, 46 Cal.App.4th at p. 1843, 54 Cal.Rptr.2d 176, italics added.)
The court held the evidence supported only the conclusion that the situation on the property had not stabilized one year prior to the filing of the owners' claim. As a result of the city's ongoing periodic design, maintenance and mitigation activities, relatively minor erosion damage to the property was still occurring when the claim was filed, and was followed by a deep-seated landslide, which effectively destroyed the property. (Ibid.) Because of this ongoing process of damage, the court concluded that the city's liability for damages that occurred more than one year before the filing of the tort claim was not cut off by Government Code section 911.2, and carriers providing coverage before that date were not exonerated from liability.
The Stonewall court did not discuss our decision in Smith v. County of Los Angeles (1989) 214 Cal.App.3d 266, 262 Cal.Rptr. 754. In Smith, owners of three homes destroyed by a landslide sued the County of Los Angeles on causes of action for inverse condemnation, dangerous condition, and nuisance. The tort claims were filed in 1982. The owners claimed that the county had cut into a hill in the 1930's to create three new roads, which removed support for their residences and reactivated an ancient landslide. The county argued the claims were untimely because they were filed more than one year after visible cracks appeared on the property in June 1981. (Id. at p. 280, 262 Cal.Rptr. 754.) The county maintained it could raise the timeliness of the homeowner's tort claims for the first time on appeal since the issue was one of law.
Citing Oakes v. McCarthy Co. (1968) 267 Cal.App.2d 231, 254-255, 73 Cal.Rptr. 127, we held the determination of when the statute of limitations began to run was a question of fact because "`[o]nly when the consequential damage is sufficiently appreciable to a reasonable man may we hold an owner to a duty of expeditiously pursuing his remedies. As to when the consequential damage reached this point was a question of fact. [Citations.]'" (Smith v. County of Los Angeles, supra, 214 Cal. App.3d at p. 281, 262 Cal.Rptr. 754.) We concluded that the issue of when damage to the owners' residences became sufficiently appreciable to accrue causes of action for nuisance and dangerous condition of public property could not be determined as a matter of law from the record, and therefore could not be raised for the first time on appeal. (Smith, at p. 281, 153 P.2d 69.) The case did not discuss the rule that an action in inverse condemnation or a related cause of action for nuisance, does not accrue until the damage has stabilized.
*452 The court held that a factual dispute on the accrual issue presents a question of fact for the trier of fact to resolve. (Ibid.)
Plaintiffs third amended complaint alleges that the construction of the subway rail system "is and/or will be continuing in the future." It further alleges "[t]he ongoing construction has damaged and Plaintiffs are informed and believed will continue to damage Plaintiffs businesses and properties by the following activities, conditions and/or factors secondary thereto which have caused and will continue to cause ongoing interference with Plaintiffs lawful use of said properties and the conducting of business thereon...." Thirteen subparagraphs follow this allegation, detailing the conduct causing damage to plaintiffs property. In her second cause of action, plaintiff alleged a continuing private nuisance.
Applying principles announced in Pierpont Inn, Inc. v. State of California, supra, 70 Cal.2d 282, 74 Cal.Rptr. 521, 449 P.2d 737, and Stonewall Ins. Co. v. City of Palos Verdes Estates, supra, 46 Cal. App.4th 1810, 54 Cal.Rptr.2d 176, we conclude that plaintiff has adequately alleged a continuous and repeated course of conduct causing damages to her property, which had not stabilized at the time the third amended complaint was filed. Therefore, according to the pleadings, the causes of action for inverse condemnation and continuing nuisance had not yet accrued.
The related tort claims are governed by a similar analysis. At oral argument, plaintiff requested leave to amend to more clearly allege the facts related to the stabilization rule of accrual. This amendment was necessary, she argued, in order to establish that her tort claims were brought within one year of that accrual as required by Government Code section 911.2.
As in Smith v. County of Los Angeles, supra, 214 Cal.App.3d 266, 262 Cal.Rptr. 754, we cannot say as a matter of law from the third amended complaint when the statutes of limitations on these causes of action began to run. Plaintiff alleged continuing and future harm from the MTA's activities. "By enacting [Government Code] section 901, the Legislature directed the courts to apply the statute of limitations corresponding to the cause of action asserted.... The determination about when a cause of action has accrued for purposes of this statute is a proper subject for a jury when the facts are in dispute. [Citations.]" (Jefferson v. County of Kern (2002) 98 Cal.App.4th 606, 615, 120 Cal.Rptr.2d 1.) We can say, and we hold, that the pleading does not justify a demurrer based on failure to timely comply with the Tort Claims Act. Based on this conclusion, we do not reach the arguments about whether the MTA was estopped from raising the defense of the Tort Claims Act.
The trial court erred in sustaining the MTA's demurrer to the third amended complaint without leave to amend.

DISPOSITION
The order of dismissal is reversed and remanded with directions that plaintiff be allowed to amend her complaint. Plaintiff is to have her costs on appeal.
We concur: CHARLES S. VOGEL, P.J., and HASTINGS, J.
NOTES
[1] The first amended complaint does not explain why it alleges that FEMA determined earthquake was not the cause of the problems in both March 1996 and August 1996.
[2] We omit some of the procedural history (e.g. motions to strike brought by MTA and challenges by other defendants to the pleadings) as immaterial to this appeal.
[3] By letter pursuant to Government Code section 68081, we asked counsel to address the accrual theories discussed in this decision at oral argument.