Filed 7/16/14  Harris v. Recek CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DEVONTE B. HARRIS,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>BRIAN RECEK et al.,<br><br>    Defendants and Respondents. | F066213<br><br>(Kings Super. Ct. No. 11C0218)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Donna Tarter, Judge.

Devonte B. Harris, in pro. per., for Plaintiff and Appellant.

Reily & Jeffery, Janine K. Jeffery and Oren Rosenthal for Defendants and Respondents.

-ooOoo-

---

[*] Before Levy, Acting P.J., Poochigian, J. and Peña, J.

## INTRODUCTION

Plaintiff, a prisoner, filed a civil complaint against several employees of the California Department of Corrections and Rehabilitation. He maintained several causes of action arising from allegations that he was denied a single dinner meal, placed on property restriction for violating prison rules and was made to bear the weight of a 10-pound security triangle[1] for 15 minutes.

In October 2011, the superior court sustained defendants' demurrer to plaintiff's complaint. The superior court granted leave to amend as to some causes of action, while denying leave to amend as to other claims.

Plaintiff filed a second amended complaint against respondents, Sergeant Rasley and Correctional Officers Mendoza, Rollins, Velasco, Recek, Sanchez, and Capano. The complaint contained 12 causes of action, and defendants demurred to all of them. This time, the superior court sustained the demurrer and denied leave to amend as to all causes of action. Plaintiff appeals from the resultant judgment of dismissal.

We conclude that the court properly sustained the demurrer as to all causes of action, including plaintiff's claim that the confiscation of his legal paperwork violated his right to access the courts. However, as to the denial of access claim only, we conclude that leave to amend should have been granted. Therefore, we reverse the judgment as to the denial of access claim and direct the court to grant leave to amend that claim only.

## FACTS

A. <u>Complaint's Allegations</u>

On March 13, 2010, plaintiff complained about "the size and condition" of his cake dessert. Officer Mendoza then refused to give plaintiff his food tray. Afterwards, as prison staff were collecting trays and trash, plaintiff held open his food port "to talk to

---

[1] A security triangle is a "metal triangular bar that weighs around 10 pounds and has a chain that can be connected to handcuffs to prevent an inmate from" withholding his or her handcuffs.

supervisory staff about obtaining" his "evening meal." Mendoza "lied" and said that plaintiff had refused his food tray. Plaintiff countered that he had, in fact, not refused his food tray. Sergeant Rasley ordered plaintiff to release the food port, but plaintiff refused. Plaintiff released the food port "around" an hour later. Plaintiff never received that night's meal.

The next day, Officers Recek and Capano escorted plaintiff to the shower. Plaintiff was placed in a security triangle for the trip. After plaintiff showered, he was again placed in the security triangle. The triangle was allowed to "hang freely through the cuff port of the shower door." This required plaintiff to support the weight of the security triangle, causing him "extreme pain." Plaintiff was in the position for "approximately 15 minutes." Officers Rollins, Capano and Sanchez observed plaintiff in "obvious pain and discomfort." Neither they, nor Officer Velasco, attempted to "stop this misconduct." Rasley had "ordered this use of the security triangle." Plaintiff eventually "maneuvered the handcuffs to the front by stepping through them.

While plaintiff was in the shower, prison staff entered his cell. Officers Recek, Capano, Rollins and Sanchez took "all" of plaintiff's "property" out of his cell, including bedding, laundry, stamps, envelopes, paper, writing instruments, eating utensils and legal books, magazines and research.

Plaintiff demanded to talk to the sergeant. An unidentified sergeant "came back with" Corcoran State Prison operational procedure No. 222.[2] That procedure, according to the complaint, provided that prison officials could only place inmates on certain types of property restriction when the inmate "cover[s] their cell doors, lights, windows, etc. to the extent it causes a breach of security" or "persist[s] in disruptive, destructive and

---

[2] It is unclear if this allegation indicates that the sergeant actually returned with a physical copy of the operational procedure or simply cited the operational procedure to plaintiff.

dangerous behaviors and will not respond to orders and warnings to desist." Plaintiff told the sergeant that he did not cover his cell at all.

Plaintiff told Sergeant Rasley he would go back to his cell after his "legal material[s]" were returned because they were exempt from property restriction. Rasley agreed to return plaintiff's legal materials. When plaintiff returned to his cell, "numerous items related to" the "legal material" were missing, including "appeal responses, medical and mental health records, notes from legal research … address books, exhibits of CDCR paperwork and supporting documentary evidence for my criminal appeal and federal lawsuits." As a result, plaintiff claims he was unable to consult with his lawyer in a criminal case. Additionally, plaintiff was "prejudiced at the critical stage of drafting … discovery requests [*sic*] which led to inadequate disclosures" in a federal case brought pursuant to "[section] 1983."[3]

Prison staff also refused to return plaintiff's "paper, postage and a writing utensil" because they were not legal materials. Plaintiff borrowed a "writing utensil" from another inmate so he could draft an appeal and request mental health services. Plaintiff "endured these conditions" for 10 days.

Plaintiff alleged that "[a]s a result of these deprivations, I was unable to maintain personal cleanliness, I was subjected to cold temperatures at night which factored into sleep deprivation, I was angry, humiliated, embarrassed and worried."

## DISCUSSION

Plaintiff challenges the court's ruling on the demurrer in several respects. Plaintiff claims the meal "deprivation" incident supports a cause of action for negligence. He also argues that his first five causes of action successfully stated a claim. Those causes of action are: negligent infliction of emotional distress (first); intentional infliction of

---

[3] Presumably, section 1983 of title 42 of the United States Code.

emotional distress (second); excessive force/Eighth Amendment violations (third); "assault and battery" (fourth); negligent failure to stop Officer Recek's "assault and battery (fifth). Plaintiff has also challenged the court's ruling as to the seventh cause of action, for negligent infliction of pain and suffering resulting from plaintiff's property restriction status.[4] We will address each in turn.

A. The Meal "Deprivation" Incident Does not Support a Cause of Action for Ordinary Negligence

First, plaintiff argues that he successfully stated a claim for ordinary negligence. He contends that defendants caused him to become hungry and that his emotional distress was directly related to that hunger.

We conclude plaintiff did not state a claim for ordinary negligence because the allegedly wrongful conduct at issue in the meal "deprivation" incident was intentional, not negligent. The complaint alleged that Officer Mendoza "refused" to give plaintiff his food and that Officer Rollins "acquiesced in this food deprivation." There is no allegation that defendants acted negligently rather than intentionally.

> "Negligence is an unintentional tort, a failure to exercise the degree of care in a given situation that a reasonable man under similar circumstances would exercise to protect others from harm. [Citations.] A negligent person has no desire to cause the harm that results from his carelessness, [citation], and he must be distinguished from a person guilty of willful misconduct, such as assault and battery, who intends to cause harm. [Citation.] Willfulness and negligence are contradictory terms. [Citations.] If conduct is negligent, it is not willful; if it is willful, it is not negligent." (*Donnelly v. Southern Pacific Co.* (1941) 18 Cal.2d 863, 869. But see generally *American Employer's Ins. Co. v. Smith* (1980) 105 Cal.App.3d 94.)

---

**4** On appeal, plaintiff does not address his other causes of action and, therefore, neither do we. (See *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1504 [when plaintiff does not defend a cause of action on appeal from an order sustaining a demurrer, the propriety of the court's ruling as to that cause of action is waived].)

B.  First and Second Causes of Action

Plaintiff next argues his first and second causes of action for negligent and intentional infliction of emotional distress were viable because "[d]efendants denied [p]laintiff his dinner causing him hunger."  One element of such claims is "extreme and outrageous conduct by the defendant …."  (*Conley v. Roman Catholic Archbishop* (2000) 85 Cal.App.4th 1126, 1133.)  " 'Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.'  [Citation.]"  (*Ibid*.)

The conduct at issue in the meal "deprivation" incident was the withholding of a single meal.  Even if this conduct could potentially be construed as "improper" or contrary to prison regulations (see 15 Cal. Code Regs., tit. 15, § 3050, subd. (a)(1)), it cannot be deemed " 'so extreme as to exceed all bounds of that usually tolerated in a civilized community'  [Citation.]"  (Cf. *Darting v. Farwell* (9th Cir. 2005) 139 Fed.Appx. 847, 847–848.)[5]  Therefore, the court properly sustained the demurrer as to the first and second causes of action.

C.  Third Cause of Action

Plaintiff also argues that his third cause of action for an alleged Eighth Amendment violation was viable. We disagree.

An Eighth Amendment claim "ordinarily cannot be predicated upon a de minimis use of physical force…."  (See *DeWalt v. Carter* (7th Cir. 2000) 224 F.3d 607, 620.)  Consequently, even when the particular use of force was "unjustified," there may be no Eighth Amendment violation.  (*Ibid*.)  In evaluating these claims, courts consider "the

---

[5] We may cite this unpublished federal case as persuasive authority.  (*Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, 1501, fn. 2; *Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1394, fn. 3; *People v. Evans* (2011) 200 Cal.App.4th 735, 752, fn. 11; *Hellum v. Breyer* (2011) 194 Cal.App.4th 1300, 1312, fn. 5; *Discover Bank v. Superior Court* (2005) 134 Cal.App.4th 886, 892, fn. 2; *Hillman v. Britton* (1980) 111 Cal.App.3d 810, 816, fn. 2.)

need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner…." (*Id*. at p. 619.)

Here, the use of the security triangle restraint for 15 minutes was, at most, a de minimus use of physical force. The day before, plaintiff had expressly refused to obey an order from Sergeant Rasley. Given plaintiff's recent conduct, defendants may have reasonably concluded that if they moved plaintiff to the shower he might refuse to produce his handcuffs before, during or after transport. Security triangles are used to prevent this occurrence. (See fn. 1, *ante*.) Thus, there is a clear relationship between the prison's relevant need (i.e., safe transport of prisoners) and the "force" used (i.e., a security triangle).

However, plaintiff apparently contends that the "force" used here went beyond what was needed. The complaint's averment on this issue is unclear. It states: "[Officer] Recek left the heavy metal triangle to hang freely through the cuff port of the shower door. Being in this compromised position of having to support the weight of the metal triangle by the link of handcuffs to the back on my wrist caused extreme pain." !(MtA 8)! It is not clear whether Recek could have positioned the triangle in a different manner to alleviate any discomfort.[6] And the complaint does not clearly explain how the triangle, plaintiff and the shower door were oriented. As a result, it is unclear why plaintiff's position was more painful than other situations where the triangle is used. But even assuming Recek could have positioned the triangle in a more comfortable way, we would still find no Eighth Amendment violation. At most, it appears plaintiff was required to bear 10 pounds of weight on his wrists for 15 minutes. The apparatus applying the

---

[6] Indeed, plaintiff admits he was able to "maneuver[] the handcuffs to the front by stepping through them." !(MtA 8)!

7.

"force" at issue here was designed to promote safety by preventing inmates from withholding their handcuffs from prison guards. And the complaint alleges that plaintiff suffered pain during the incident, but raises no other resultant injury. Considering these factors together, we conclude that the use of "force" alleged here was de minimis (if anything) and did not violate the Eighth Amendment as a matter of law. (See *DeWalt v. Carter*, *supra*, 224 F.3d at p. 620.) The superior court properly sustained a demurrer to this cause of action.

### D. Fourth and Fifth Causes of Action

A prima facie element of a battery claim against a law enforcement officer is the use of *unreasonable* force. (See *Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1415; see also *Yount v. City of Sacramento* (2008) 43 Cal.4th 885 [common law battery cause of action against police officer requires proof that officer used unreasonable force].) For the reasons explained in our discussion of the third cause of action, we also conclude that the face of the complaint demonstrates that Officer Recek did not use unreasonable force.[7]

Plaintiff, having recently disobeyed direct orders from prison staff, was being transported to and from the showers. Prison staff utilized a security triangle, designed to prevent plaintiff from refusing to produce his handcuffs. If the staff had detached the security triangle while plaintiff was showering, they would have had to reattach it afterwards. At that point, plaintiff might have refused to produce his handcuffs, defeating the purpose of utilizing the security triangle in the first place. Therefore, we conclude the facts, as alleged by the complaint, demonstrate that any "force" used was reasonable. The court properly sustained the demurrer as to the fourth cause of action.

---

[7] "[A] prima facie element of a battery claim against a police officer is the use of *unreasonable* force …." (*Susag v. City of Lake Forest*, *supra*, 94 Cal.App.4th at p. 1415, italics added; see also *Yount v. City of Sacramento*, *supra*, 43 Cal.4th 885 [common law battery cause of action requires proof that officer used unreasonable force].)

Because the fifth cause of action was predicated on the other defendants' alleged failure to "stop defendant Recek's assault and battery," that claim must also fail.

### E. Plaintiff's Claim Regarding Property Restriction Status

#### a. Seventh Cause of Action

In the fourth heading of the opening brief, plaintiff indicates that he stated a viable claim in his fifth cause of action. However, the argument that follows discusses the substance of the *seventh* cause of action, not the fifth. Therefore, we will address the viability of that cause of action as well.

In the seventh cause of action, plaintiff alleges that the defendants "negligently inflicting pain and suffering, psychological and emotional distress on plaintiff by erroneously placing him on a management cell type status." According to the complaint, prison officials may place inmates on property restriction equivalent to a management cell "if inmates persist in disruptive, destructive and dangerous behaviors and will not respond to orders and warnings to desist." (Cf. Cal. Code Regs., tit. 15, § 3332, subd. (f).) Plaintiff's own allegations demonstrate that he did in fact fail to follow orders to let go of his food port. The complaint states: "Sgt. Rasley came and gave me a direct order to release the food port and I refused." Therefore, even assuming that a violation of prison policy occurred and could support a claim for negligent infliction of emotional distress, the complaint's allegations show that no such violation occurred here.

#### b. Denial of Access to the Courts Claim

In response to plaintiff's allegations of improper property restriction, defendants rely entirely on their contention that plaintiff's behavior "falls squarely within the ambit" of the applicable prison regulations. As explained above, we agree with this assertion. However, the fact that the complaint shows that plaintiff's conduct warranted property restriction does not end our analysis. Even if prison regulations justify restrictions on a

prisoner's property, the specific manner by which the restriction is implemented may nonetheless violate the federal constitution.**8**

Prisoners have a constitutional right to access the courts. (*Lewis v. Casey* (1996) 518 U.S. 343, 346.) There are at least two categories of suits prisoners bring to enforce this right. (See *Christopher v. Harbury* (2002) 536 U.S. 403, 412–414.) "In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time. (*Id.* at p. 413.) "The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried … no matter what official action may be in the future."**9** (*Id*. at pp. 413–414, fn. omitted.) In either type of suit, the prisoner must plead facts demonstrating that the underlying action frustrated by prison officials was " 'nonfrivolous' " or " 'arguable.' " (*Id*. at p. 415.) Moreover, when asserting claims in the second category, the complaint must identify "a remedy that may be awarded as recompense …." (*Ibid*.)

Here, plaintiff alleges that prison officials confiscated his property, including "legal material." Sergeant Rasley said he would return the legal materials, but failed to do so. The unreturned documents allegedly included "appeal responses, medical and mental health records, notes from legal research … address books, exhibits … and supporting documentary evidence for [a] criminal appeal and federal lawsuits." !(MtA 12)! He claims that as a result of defendants' decision to confiscate these materials and not return them, plaintiff suffered several adverse rulings and dismissals in various cases. !(MtA 13)! Because this is an appeal from a demurrer, we treat these allegations as true. (*Thrifty Payless, Inc. v. Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1234,

---

**8** Plaintiff's causes of action are not labeled as denial-of-access-to-the-courts claims. However, we "look past the form of the pleading to its substance." (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908.) "Our task is to determine whether the pleaded facts state a cause of action on any available legal theory." (*Ibid*.)

**9** Plaintiff's suit appears to be in the second category.

fn. 1.) And, if true, the allegations could form the core of a viable denial of access claim. (*Lewis v. Casey*, *supra*, 518 U.S. at p. 350, citing *Johnson v. Avery* (1969) 393 U.S. 483, 489–490 [Supreme Court has protected right to access courts "by prohibiting state prison officials from actively interfering with inmates' attempts to prepare legal documents"].)

Notably, the Supreme Court has imposed specific pleading requirements for denial of access claims. (See *Christopher v. Harbury*, *supra*, 536 at p. 415.) Plaintiff failed to satisfy those requirements by (1) not describing the underlying actions that were adversely affected and (2) not proposing a remedy for the alleged violation. (See *ibid.*) Therefore, a demurrer did lie as to plaintiff's denial of access claim. We will therefore affirm the decision to sustain the demurrer, even though defendants did not assert these specific objections below. (See *Martin v. Bridgeport Community Assn, Inc.* (2009) 173 Cal.App.4th 1024, 1031.)

Next, we must determine if plaintiff must be granted leave to amend this claim. If "an amendment *could* cure the defect," then leave to amend must be granted. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081, italics added.) That is, "unless the complaint shows on its face that it is incapable of amendment," leave to amend must be granted. (*Lee v. Los Angeles County Metro. Transportation Auth.* (2003) 107 Cal.App.4th 848, 854, italics removed; accord *Berkeley Police Assn. v. City of Berkeley* (1977) 76 Cal.App.3d 931, 942.) Here, the defect is that plaintiff did not allege sufficient facts regarding the substance of the underlying actions, the specifics of how each action was adversely affected by defendants' alleged conduct, or proposed remedies. Since the complaint does not show on its face that it is incapable of such an amendment, we direct the court to grant plaintiff leave to amend the complaint as to the claim he was unconstitutionally denied access to the courts. [10]

---

[10] We acknowledge that plaintiff has had a prior opportunity to amend this cause of action. But now "that we have clarified and isolated" the pivotal pleading defect, it is "appropriate" for plaintiff to be granted leave to amend. (*Smith v. State Farm Mutual*

11.

**DISPOSITION**

The judgment is reversed only insofar as it denies leave to amend plaintiff's denial-of-access-to-the-courts claim.  The superior court is directed to enter an order (1) sustaining the demurrer as to plaintiff's claim that he was denied access to the courts with leave to amend and (2) sustaining the demurrer without leave to amend as to all other causes of action.

---

*Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 724–725.)  Defendant did not raise these particular issues below, and plaintiff is entitled to have the specific pleading deficiencies "pointed out" before being denied leave to amend.  (Cf. *Loper v. Flynn* (1946) 72 Cal.App.2d 619, 625.)  "Liberality in permitting amendment is the rule, not only where a complaint is defective as to form but also where it is deficient in substance, if a fair prior opportunity to correct the substantive defect has not been given.  [Citation.]"  (*McDonald v. Superior Court* (1986) 180 Cal.App.3d 297, 304.)