173 Cal.App.4th 1082 (2009)
___ Cal.Rptr.3d ___
DICON FIBEROPTICS, INC., Plaintiff and Appellant,
v.
FRANCHISE TAX BOARD, Defendant and Respondent.
No. B202997.
Court of Appeals of California, Second District, Division Eight.
May 7, 2009.
*1084 Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, Thomas R. Freeman, Paul S. Chan; Dakessian Law Firm, Akerman Senterfitt and Marty Dakessian for Plaintiff and Appellant.
Silverstein & Pomerantz, Amy L. Silverstein and Edwin P. Antolin for Deluxe Corp. as Amicus Curiae on behalf of Plaintiff and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, W. Dean Freeman, Felix Leatherwood, Mark P. Richelson and Ronald Ito, Deputy Attorneys General, for Defendant and Respondent.

OPINION
RUBIN, Acting P. J.
Dicon Fiberoptics, Inc., appeals from the trial court's judgment sustaining without leave to amend the demurrer of the Franchise Tax Board to Dicon's complaint seeking refund of a tax credit for employing disadvantaged workers. To receive the credit, Dicon submitted vouchers to the board certifying Dicon had employed disadvantaged workers. After auditing the vouchers, the board partially denied the tax credit to Dicon. Dicon contends the board has no legal authority to audit its vouchers, a contention we reject. We nevertheless conclude Dicon states a cause of action that the board exercised its audit power improperly, and therefore the trial court erred in sustaining the board's demurrer. Accordingly, we reverse and remand.

FACTS AND PROCEEDINGS
Certain areas and localities in California suffer from persistently high unemployment, poverty, and anemic economic growth and activity. Hoping to remedy these problems, the Legislature enacted Government Code section 7070 et seq., which is known as the Enterprise Zone Act (Act). The Act's purpose is to reduce obstacles the Legislature believes impede private investment and business in economically depressed areas in California. (See Gov. Code, § 7071, subd. (a).) The Act permits city and county governments containing depressed regions within their jurisdictions to apply to the Department of Housing and Community Development (DHCD) for designation of those regions as "Enterprise Zones." (Gov. Code, §§ 7072, subd. (a), 7073, subds. (a), (b).) Businesses operating within an Enterprise Zone that *1085 hire certain categories of disadvantaged workersknown as "qualified employees" earn tax credits for the wages they pay those workers. (Rev. & Tax. Code, § 23622.7.) Depending on the length of time of employment, the tax credit is between 10 and 50 percent of a worker's wage. (Id., subd. (a).)
In 1994, the Legislature expanded the categories of qualified employees covered by the Act from participants in certain economic assistance and job programs to those eligible to participate in those programs.[1] (Assem. Com. on Revenue and Taxation, Analysis of Sen. Bill No. 1770 (1993-1994 Reg. Sess.) as amended June 2, 1994.) Lawmakers anticipated that because a worker's eligibility to participate in a job or assistance program involved standards less black-and-white than confirming actual participation, the Legislature's expansion of the types of workers whose employers could receive a tax credit increased the risk of tax abuse. Thus, administrative regulations governing the credit required the local entity operating an Enterprise Zone to establish a vouchering program to certify a worker satisfied the statutory criteria of a "qualified employee." (Cal. Code Regs., tit. 25, § 8463, subd. (a)(1).) Depending under which job or assistance program a worker was deemed a "qualified employee," a vouchering program required a variety of documents to prove the worker met the statutory criteria. (Rev. & Tax. Code, § 23622.7; Cal. Code Regs., tit. 25, §§ 8463, 8466.) Following a vouchering program's receipt of documents proving a worker was a "qualified employee," the business employing the worker could receive a voucher from local authorities identified by the program.[2]
Appellant Dicon Fiberoptics does business in an Enterprise Zone. Dicon alleges it complied with all requirements for earning the tax credit for employing qualified employees in an Enterprise Zone. Among those requirements, it obtained vouchers from any one of several state or local entities *1086 who certified Dicon's employees fit within categories of workers covered by the Act. (Rev. & Tax. Code, § 23622.7, subd. (c).)[3] In November 2003, Dicon submitted a claim for refund of taxes for the taxable year ending in March 2001. Submitting vouchers showing it had employed qualified workers in the 2000-2001 tax year, Dicon sought a credit of more than $3.6 million. Almost three years later in October 2006, respondent Franchise Tax Board (FTB) denied $1.1 million of the requested refund. Dicon alleges FTB's denial was improper because FTB wrongfully refused to accept some of Dicon's vouchers. FTB demanded instead that Dicon provide the documents underlying the local agencies' issuance of the vouchers.
Dicon appealed to the State Board of Equalization, which dismissed the appeal in March 2007. Dicon thereafter filed the lawsuit at issue in this appeal. Seeking recovery of the $1.1 million credit, Dicon alleges FTB improperly rejected its vouchers. Dicon alleges it did not have the documents FTB demanded because they related to the personal circumstances of Dicon employees that made them "qualified employees," such as a criminal record and other impediments to employment, that were private to employees and beyond Dicon's custody and control.
FTB demurred to the complaint. It argued that Revenue and Taxation Code section 23622.7 governing the tax credit and vouchers did not vest local employment or social services agencies with exclusive authority to certify a worker as a "qualified employee." Thus, the statute did not obligate FTB to accept vouchers from local agencies, and did not prohibit FTB from asking Dicon for the documents on which the local agencies based their decisions. Because Dicon had not supplied the documents FTB demanded, FTB asserted Dicon failed to state a cause of action. The trial court agreed and sustained the demurrer without leave to amend. The court entered judgment for FTB, and this appeal followed.

DISCUSSION
Dicon contends the court erred by sustaining FTB's demurrer to Dicon's complaint for failing to state a cause of action. According to Dicon, the statute's plain language vests local employment and social services agencies *1087 with sole authority to issue vouchers.[4] Such authority would be meaningless, Dicon reasons, if FTB could second-guess the agency by auditing the voucher. Consequently, Dicon asserts its complaint states a cause of action for a tax refund by alleging FTB lacked authority to reject its vouchers.
Dicon also contends the trial court compounded its error by sustaining the demurrer without leave to amend. According to Dicon, even if FTB had the authority to audit vouchers, the court erred in denying Dicon leave to amend its complaint to allege FTB mishandled its audit of the vouchers and wrongfully denied the tax credit.
(1) We agree the court erred in sustaining FTB's demurrer. A complaint states a cause of action if it alleges facts that entitle the plaintiff to relief under any theory. In reviewing the trial court's order sustaining a demurrer, we disregard the complaint's legal theories and conclusions. (TracFone Wireless, Inc. v. County of Los Angeles (2008) 163 Cal.App.4th 1359, 1368 [78 Cal.Rptr.3d 466].) Instead, we look to whether the complaint states facts that support a cause of action under any theory. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; Mills v. U.S. Bank (2008) 166 Cal.App.4th 871, 884 [83 Cal.Rptr.3d 146].) We know of no authority that imposes a higher pleading standard for a cause of action for a tax refund than other causes of action. (Accord, McHugh v. County of Santa Cruz (1973) 33 Cal.App.3d 533, 544 [109 Cal.Rptr. 149] ["The complaint in an action to recover taxes paid under protest must allege sufficient specific facts to support a conclusion that assessments complained of were excessive or invalid. [Citations.] The allegations must be liberally construed with a view to substantial justice as required under a general demurrer . . . ."].) The complaint need not establish the statute, case law, or legal rule that the taxing authority violated, but need only allege that the authority erred. (Jibilian v. Franchise Tax Bd. (2006) 136 Cal.App.4th 862, 866, fn. 3 [39 Cal.Rptr.3d 123] [court reviewing demurrer disregards complaint's erroneous legal conclusions].) It follows, therefore, that a taxpayer's complaint states a cause of action for a tax refund if it alleges the plaintiff paid the tax, filed a tax return, requested the refund, and the tax authority denied the refund. (2) Here, Dicon contends FTB lacked the authority to reject Dicon's vouchers certifying Dicon's workers were qualified employees. That contention is a legal conclusion that we may disregard. For reasons we will explain, we conclude FTB may in fact audit vouchers. But even when we disregard Dicon's *1088 mistaken legal contention, its complaint nevertheless alleges facts sufficient to state a cause of action for a tax refund. Accordingly, the court erred in sustaining FTB's demurrer.
We hold alternatively that if a cause of action for a tax refund must identify the taxing authority's particular legal error in denying the refund, the trial court erred here in denying Dicon leave to amend its complaint. Dicon's opposition to FTB's demurrer requested leave to amend, and its opening brief on appeal describes the proposed amendments.[5] Those amendments allege that even if FTB had the authority to audit the vouchers, it did so incorrectly here. For example, Dicon alleges FTB applied an unlawfully demanding standard of proof in auditing the vouchers. Dicon also alleges FTB improperly refused to accept vouchers for workers whose eligibility to participate in certain economic assistance and jobs programs made them qualified employees warranting vouchers.
(3) The trial court's error in sustaining FTB's demurrer warrants reversal of the court's judgment and remand for further proceedings. For the trial court's and parties' guidance after remand, we address the unanswered legal question looming over these proceedings: Does FTB's authority to examine and audit tax returns permit FTB to reject a voucher issued by a local employment or social services agency?[6] FTB answers "yes." Dicon, in contrast, says a local agency's decision is binding on FTB and answers "no." Thus, according to Dicon, FTB must limit its review of vouchers to confirming Dicon in fact obtained the voucher from one of the local agencies identified in the statute; FTB may not, Dicon asserts, review the local agency's underlying decision to issue the voucher. We hold vouchers are prima facie proof a worker is a "qualified employee," but FTB may audit such vouchers. In such an audit, FTB bears the burden of rebutting the voucher's prima facie value, typically by proving the worker did not meet the criteria to be a "qualified employee."[7] In trying to meet that burden, FTB may not rely on the employer's failure to produce during the audit documents *1089 establishing a worker's eligibility to the extent regulations governing the tax credit charge the Enterprise Zone, not the employer, with the obligation to maintain documents of workers' eligibility.
(4) FTB rests its assertion of authority on its powers to examine and audit tax returns. FTB asserts Revenue and Taxation Code section 23622.7's empowerment of local employment and social services agencies to issue vouchers does not override FTB's authority to examine and audit those vouchers. Under Revenue and Taxation Code section 19032, FTB has the right to examine Dicon's tax returns for their correctness. (§ 19032 ["As soon as practicable after the return is filed, the Franchise Tax Board shall examine it and shall determine the correct amount of the tax."].) And under Revenue and Taxation Code section 19504, FTB may demand Dicon produce documents "relevant" to FTB's examination of the return in an audit. Section 19504, subdivision (a) states: "The Franchise Tax Board, for the purpose of ... ascertaining the correctness of any return ... shall have the power to require by demand, that an entity of any kind ... provide information or make available for examination or copying at a specified time and place, or both, any book, papers, or other data which may be relevant to that purpose."
Dicon, on the other hand, notes Revenue and Taxation Code section 23622.7 principally mentions local entities as authorized to issue a voucher. The statute permits the following to certify a worker is a qualified employee: "the Employment Development Department, ... the local county or city Job Training Partnership Act administrative entity, the local county GAIN office or social services agency, or the local government administering the enterprise zone." (Id., subd. (c)(1).) From the statute's express identification of authorized entities, and particularly its focus on local ones, Dicon contends the Legislature vested only those entities with the power to issue vouchers, with a particular preference toward the issuance of vouchers by local agencies. Citing the principle that a statute's expression of some things necessarily excludes other things (De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates (2001) 94 Cal.App.4th 890, 911, fn. 8 [114 Cal.Rptr.2d 708] ["Expressio unius est exclusio alterius."]), Dicon concludes that the statute's failure to mention FTB means the Legislature intended FTB to have no part in issuing vouchers, meaning FTB could not overrule or second-guess issuing agencies by auditing their decisions.
FTB answers that the statute does not explicitly say local agencies have exclusive authority over vouchers. Noting that repeal by implication is disfavored, FTB concludes that the statute's silence about FTB preserves *1090 FTB's customary power to examine and audit. We conclude FTB has the better argument based on public policy, the voucher's purpose, and legislative history.
Dicon reasons the Legislature authorized local agencies to issue vouchers because a worker's status as a "qualified employee" sometimes depends on a particular Enterprise Zone's local economy and job market. For example, qualified employees include long-term unemployed workers with "limited opportunities for employment or reemployment in the same or similar occupation in the area in which the individual resides." (Rev. & Tax. Code, § 23622.7, subd. (b)(4)(A)(iv)(IV)(cc), italics added.) Qualified employees also include formerly self-employed persons who are currently unemployed "as a result of general economic conditions in the community in which he or she resides." (Id., subd. (b)(4)(A)(iv)(IV)(dd), italics added.) FTB asserts, however, that Dicon overstates the expertise of local agencies. FTB notes that most categories of "qualified employees" do not involve local conditions and are proven by evidence which FTB and local agencies are equally capable of reviewing. Such documents include medical reports, information from statewide jobs programs, and media reports. (Cal. Code Regs., tit. 25, § 8446.) As to this point, we conclude FTB makes the more persuasive claim.
Another reason we conclude FTB may audit vouchers is the State Board of Equalization so held in In the Matter of the Appeal of Deluxe Corp. (Dec. 12, 2006, No. 297128) 2006 Cal.Tax Lexis 432.[8] The State Board of Equalization rested its holding on three points. First, the statutes granting FTB the powers to examine and audit tax returns contain broad language and do not carve out exceptions for decisions by other governmental bodies. (Rev. & Tax. Code, §§ 19032, 19504.) Second, decisions by local agencies generally do not bind state government. Finally, for a few years in the mid-1990's, Government Code former section 7076 entitled taxpayers to request a refund of their voucher application fee if FTB rejected the voucher. (Enacted by Stats. 2004, ch. 225, § 14 and repealed by Stats. 2006, ch. 634, § 1.) Although this refund provision existed only from mid-2004 through 2006 after Dicon had already claimed its tax credit, the provision's existence contemplated that FTB from time to time might reject a voucher.
Dicon urges us not to draw too strong an inference from a taxpayer's short-lived right to seek a refund of the application fee. Dicon emphasizes *1091 that the right to a refund arose after Dicon had applied in 2003 for the tax credit it earned in its 2000-2001 tax year. Dicon contends that a later Legislature's enactments do not reveal a previous Legislature's intent. Hence, according to Dicon, a later Legislature's implied ratification of FTB's power to reject vouchers does not mean an earlier Legislature envisioned FTB having that power. In any case, Dicon notes, FTB might have any number of reasons for rejecting a voucher other than reversing a local agency's classification of a worker as a qualified employee. For example, FTB might reject the voucher because the employer hired the worker before the state conferred Enterprise Zone status to the employer's geographical area. (See Rev. & Tax. Code, § 23622.7, subd. (b)(4)(A)(iii).) Or the employer might not merit the voucher because the worker did not work enough hours for the employer. (Id., subd. (b)(4)(A)(i), (ii).) Among the prerequisites for a voucher, local agencies judged only one of themwhether a worker was a "qualified employee." (Id., subds. (b)(4)(A)(iv), (c)(1).) We pay heed to Dicon's caution against placing undue emphasis on the right to seek a refund. We do not, for example, deem the right to be dispositive. Nevertheless, it weighs, along with the other factors we cite, in FTB's favor.
Dicon asserts In the Matter of the Appeal of Deluxe Corp., supra, 2006 Cal.Tax Lexis 432 deserves little weight because the decision does not discuss the State Board of Equalization's ruling of In the Matter of the Appeal of Robert J. and Vera Cort (May 21, 1980) 1980 WL 4984. We find the failure of Deluxe Corp. to discuss Cort is not fatal to Deluxe Corp.'s analysis because the decisions are distinguishable. In Cort, tax law prohibited a landlord operating substandard rental property from deducting his business expenses. A property's substandard designation came from state or local housing agencies. (Rev. & Tax. Code, § 17274, subd. (b)(1)(A), (B); Cort, supra, 1980 WL 4984 at p. *2.) A substandard designation was binding on FTB, which could not review the housing agency's decision. Cort is distinguishable because a property's designation as substandard presumably followed an actual (or at least the right to an) adjudicatory hearing in which the landlord could challenge the designation. Having been tested in an adversarial proceeding, the substandard designation was likely reliable and worthy of deference. Here, in contrast, no adversarial proceeding likely preceded a local agency's award of a voucher. Thus, the voucher deserved much less weight before FTB than did the substandard housing designation in Cort.
Although we hold FTB may audit a voucher, we conclude from the statutory framework governing vouchers that they are prima facie evidence an *1092 employee is a qualified worker. As prima facie evidence, a voucher shifts to FTB the burden of demonstrating an employee is not a qualified worker for which no voucher should have issued.[9] We conclude FTB properly bears this burden for several reasons. First, an employer who submits a voucher to FTB has followed the statute's requirements to (1) obtain a voucher from any one of several agencies identified in the statute, and (2) present the voucher to FTB. The employer's compliance with the statute ought to count for something. Second, the documents supporting a worker's certification as a "qualified employee" are not ordinarily within the employer's custody and control, either when initially applying for a voucher from the local agency, or possibly years later during an FTB audit. Surveying the types of workers entitled to "qualified employee" status, we note that many categories involve disadvantaged workers for whom the impediments to employment involve conditions that are potentially embarrassing to a worker, such as limited literacy and criminal convictions. Documents proving such employment obstacles are not readily shared between worker and employer, especially not years later during an audit. Indeed, the statute does not require the employer to retain the documents supporting a worker's designation of "qualified employee" and administrative regulations require only the Enterprise Zone manager to keep the documents.[10] (Cal. Code Regs., tit. 25, § 8463, subd. (a)(3).) FTB appeared mindful of workers' privacy concerns when it drew the Legislature's attention to FTB's desire to minimize intrusive recordkeeping by an employer. FTB told the Legislature: "The vouchering process serves numerous functions for all parties affected, including the taxpayer, FTB, and DHCD, such as: [¶] ... [¶] 2. Provides an up-front verification process for taxpayers regarding the determination of whether a potential employee is a `qualified employee.' [¶] 3. Minimizes intrusiveness into the employee's personal life and provides confidentiality for the employee since the agency that administers the public assistance program is the one that issues the voucher. [¶] 4. Allows the employer (taxpayer) to retain less documentation to support a claim that an employee is a `qualified employee.'" (Cal. Franchise Tax Bd., analysis of Sen. Bill No. 1097 (2003-2004 Reg. Sess.) as amended July 27, 2004, p. 3.)
*1093 Another reason to extend prima facie status to a local agency's voucher is to promote the tax credit's purpose of encouraging employers to hire disadvantaged workers. The employer ordinarily has some reassurance of receiving the credit if it knows after having received a voucher that FTB bears the burden of proving the voucher was unjustified. If FTB may reassess perhaps years later a worker's status as a "qualified employee," the employer has less confidence in receiving a credit, particularly if the employee no longer works for the employer. Reducing an employer's confidence in receiving the tax credit is a disincentive to hiring a disadvantaged worker, thereby undermining the reason for the Enterprise Zone.
A third reason for granting prima facie status to a voucher is FTB told the Legislature that local agencies ought to shoulder the laboring oar in issuing vouchers. Commenting on voucher programs, FTB stated public inquiries about certification of employees under such programs risked increasing FTB's workload. FTB informed the Legislature that local agencies responsible for issuing vouchers were familiar with matters involving certification one of the arguments Dicon makes in support of a voucher's prima facie value. Thus, FTB told the Legislature, FTB intended to direct to local agencies all inquiries about vouchers. FTB stated: "Although [FTB] does not administer the determination and certification of employees as eligible under the jobs programs criteria, [FTB] staff is required to explain the criteria in forms and instructions and respond to taxpayer inquiries regarding the qualification and certification of employees. Thus, [FTB] staff is concerned that undefined terms, such as `economically disadvantaged individual' and `dislocated worker,' could cause disputes regarding whether an individual is a qualified employee. [¶] However, Trade and Commerce Agency and EDD [Employment Development Department] staff have indicated that these definitions are understood by those familiar with the TJTC [Targeted Jobs Tax Credit], JTPA, and GAIN programs and those responsible for certifying the employees. [¶] If questions regarding these definitions arise, [FTB] would refer all taxpayer questions regarding determination and certification of employees to the certifying agencies. This would likely increase the workload for those agencies." (Cal. Franchise Tax Bd., summary analysis of Sen. Bill No. 2023 (1995-1996 Reg. Sess.) as amended Aug. 31, 1996, p. 6.)
A fair reading of Dicon's complaint in light of the amendments Dicon proposes supports the allegation that FTB disregarded the prima facie weight of Dicon's vouchers when it audited them. If true, FTB erred in rejecting those vouchers unless FTB rejected them for some reason other than Dicon's failure to produce documents establishing its workers were "qualified employees."

*1094 DISPOSITION
The judgment is reversed. The trial court is directed to vacate its order sustaining the demurrer of the Franchise Tax Board and enter a new order overruling the demurrer. Appellant Dicon to recover its costs on appeal.
Bigelow, J., and O'Neill, J.,[*] concurred.
NOTES
[1] The programs included the Job Training Partnership Act (JTPA; 29 U.S.C. § 1501 et seq.) and its successor program, the Workforce Investment Act of 1998; the Greater Avenues for Independence Act of 1985 (GAIN); dislocated workers eligible for unemployment insurance benefits; disabled workers eligible for enrollment in a "state rehabilitation program"; and workers receiving Supplemental Security Income, Aid to Families with Dependent Children, food stamps, or state or local general assistance (Rev. & Tax. Code, § 23622.7, subd. (b)(4)(A)(iv)(I), (II), (IV)(aa), (V), (VII)).
[2] In greater detail, California Code of Regulations, title 25, section 8463, states: "Administration of a Vouchering Program. [¶] (a) Each enterprise zone shall have and maintain a vouchering plan containing policies and procedures for the operation of a vouchering program. The plan shall meet the following criteria: [¶] (1) The plan shall have written vouchering policies and procedures that ensure compliance with Revenue and Taxation Code Sections 17053.74 and 23622.7, Government Code Section 7070 et seq., California Code of Regulations title 10, chapter 7.8 commencing with Section 5600, and this subchapter 21. [¶] (2) The plan shall require any [employer] Applicant requesting a voucher to provide documentary evidence to substantiate that the employee for whom a voucher is requested satisfied immediately preceding the commencement of employment, the requirements of subdivision (b)(4)(A)(iv) of Revenue and Taxation Code Sections 17053.74 or 23622.7 as a qualified employee."
[3] Subdivision (c) of Revenue and Taxation Code section 23622.7, provides: "The taxpayer shall . . . [¶] (1) Obtain from the Employment Development Department, as permitted by federal law, the local county or city Job Training Partnership Act administrative entity, the local county GAIN office or social services agency, or the local government administering the enterprise zone, a certification [commonly called a `voucher'] that provides that a qualified employee meets the eligibility requirements specified in clause (iv) of subparagraph (A) of paragraph (4) of subdivision (b)."
[4] The statute also permits the state Employment Development Department to issue vouchers, but this appeal involves vouchers issued by local agencies. (Rev. & Tax. Code, § 23622.7, subd. (c)(1).)
[5] The concluding paragraph in Dicon's opposition to FTB's demurrer requested leave to amend, but did not describe the amendments Dicon proposed. Dicon's failure to identify its amendments for the trial court does not preclude Dicon from rectifying its omission by identifying its proposed amendments on appeal. (Lee v. Los Angeles County Metropolitan Transportation Authority (2003) 107 Cal.App.4th 848, 854 [132 Cal.Rptr.2d 444] ["[r]egardless of whether a request therefore was made, unless the complaint shows on its face that it is incapable of amendment, denial of leave to amend constitutes an abuse of discretion" (italics omitted)].)
[6] We asked for and received supplemental letter briefs from the parties on a voucher's evidentiary weight in an audit and the attendant burden of proof.
[7] We do not intend our holding today to restrict FTB's audit powers, to limit the scope of the audits it conducts, or hamstring its authority to gather evidence relevant to the correctness of a tax return. Rather, we direct our holding to the weight FTB must give, in the absence of any other evidence, to vouchers during audits.
[8] We acknowledge agency decisions do not control our interpretation of statutes, but those decisions can help our analysis by informing us of administrative and regulatory customs and practices. (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)
[9] Noting that the Legislature understands the principle of prima facie evidence (see, e.g., Rev. & Tax. Code, § 7058 [notice of assessment is "prima facie evidence" of regularity of assessment proceedings]), FTB contends the Legislature's failure to use the phrase "prima facie" in Revenue and Taxation Code section 23622.7 means the Legislature intended no such value for the vouchers. We think legislative oversight is the most likely explanation for the statute's silence about the voucher's evidentiary weight. If, however, we have incorrectly deduced what the Legislature would have enacted if it had directed its attention to the matter, the Legislature is free to correct us by amending the statute to make its intention clear.
[10] Because the statute imposes no duty on the employer to maintain the relevant documents, an adverse inference does not arise from the employer's retention of only the voucher while discarding documents it is not obligated to retain.
[*] Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.