Filed 9/30/20  P. v. Oliver CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAFFAR YAHYA OLIVER,<br><br>        Defendant and Appellant. | A155715<br><br>(Solano County<br>Super. Ct. No. FC49326) |

Jaffar Yahya Oliver appeals the trial court's denial of his petition for release from confinement with the Department of State Hospitals (DSH) as a Sexually Violent Predator (SVP) arguing that the trial court incorrectly denied his petition for a variety of procedural and substantive reasons, and denied his due process rights by relying on a report from the DSH, the accuracy of which he says he had no meaningful opportunity to challenge without appointment of counsel.  We conclude the trial court was right to deny the petition without a hearing, and we reject Oliver's due process claim. We therefore affirm.

1

According to the statutorily required[1] "Declaration of Annual Report: Sexually Violent Predator," dated April 26, 2018, submitted by Dr. Michelle Vorwerk in the Forensic Services Department at the DSH-Coalinga (the Vorwerk Declaration), Oliver, who has been diagnosed with "Pedophilic Disorder, Sexually Attracted to Females Nonexclusive Type," has a "long history of sexual interest in prepubescent children."  In the 1990's, starting at age 21, he "committed sexual offenses over a period of eight years," including "three [Welfare and Institutions Code] § 6600 Qualifying Offenses against three victims . . . rang[ing] in age from 8 to 13 years old. . . . All of his victims were females and his sexual acts with his victims included fondling, vaginal intercourse, digital penetration, and oral copulation."  "In addition," Dr. Vorwerk reported, Oliver has been diagnosed with "Alcohol Use Disorder, Moderate, in a Controlled Environment, Stimulant Use Disorder (Amphetamine), Moderate, in a Controlled Environment, and Antisocial Personality Disorder."

By the spring of 2018, Oliver had been receiving treatment at DSH-Coalinga for nearly nine years, having been committed there as an SVP

---

[1] "A person found to be a sexually violent predator and committed to the custody of the State Department of State Hospitals shall have a current examination of his or her mental condition made at least once every year. The report shall be in the form of a declaration and shall be prepared by a professionally qualified person."  (Welf. & Inst. Code, § 6604.9, subd. (a).) "The annual report shall include consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative, pursuant to Section 6608, or an unconditional discharge, pursuant to Section 6605, is in the best interest of the person and conditions can be imposed that would adequately protect the community."  (Welf. & Inst. Code, § 6604.9, subd. (b).)

under Welfare and Institutions Code section 6608[2] in July 2009. According to the Vorwerk Declaration, Oliver continued to suffer from a "diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely he will engage in sexually violent criminal behavior" and therefore, as of that date, still "meets the definition of a Sexually Violent Predator." The Vorwerk Declaration points out that "[t]o date, Mr. Oliver has not completed sexual offense treatment program (SOTP) at DSH-[Coalinga] and he has not had sufficient treatment for his diagnosed mental condition and other dynamic risk factors." It concludes that, "[a]t this time, neither conditional nor unconditional release is appropriate" and that "[t]he best interest of Mr. Oliver and the adequate protection [of] the community cannot be assured in a less restrictive treatment setting."

Without the concurrence of the director of the DSH, Oliver filed a pro se petition for conditional release under section 6608, subdivision (a). Oliver served his petition on James McEntee, the attorney who represented him in his commitment trial in 2009. He did not serve it on the DSH, as he was required to do under section 6608, subdivision (a). To sustain the petition, the burden was on Oliver to show at a hearing (§ 6608, subd. (k)) that he "would not be a danger to others due to his . . . diagnosed mental disorder while under supervision and treatment in the community" (§ 6608, subd. (g)). But Oliver was not entitled to a hearing as of right. If the court determined the petition was "based upon frivolous grounds," denial "without a hearing" was mandatory. (§ 6608, subd. (a).)

Centrally at issue in this appeal is the threshold question of whether Oliver's pro se petition is frivolous. To make an assessment of frivolousness,

_____

[2] Further undesignated references to statutes are to the Welfare and Institutions Code.

3

the trial court was entitled to look to Dr. Vorwerk's declaration (*People v. Olsen* (2014) 229 Cal.App.4th 981, 996) in addition to the facts alleged on the face of the petition. (*Ibid.*) We glean the following from the face of the petition. It alleges various undisputed background facts (such as the date and length of Oliver's commitment and his participation in various treatment programs) and it sets forth some rudimentary legal analysis (such as citation to and discussion of various statutes and cases), but the only specific facts offered to justify a grant of conditional release are these: (1) Oliver "has endured . . . at least three (3) revisions of the sex-offender program[,] which started with the Phase Program, then, the Good Lives Model, and now is the S.O.T.P model"; (2) Oliver has a "vested interest in obtaining release from his present confinement [and] he is not in any way trying to harass" state or local officials or the court; (3) in addition to Oliver's participation in the aforementioned treatment programs, he has "received numerous ***'CERTIFICATES OF COMPLETION'*** from auxiliary groups that are aimed at addressing [his] dynamic risk factors and any deviant sexual behaviors that [he] may have exhibited prior to his commitment"; (4) to the extent Oliver could not provide more detail about his "enthusiastic participation" in the aforementioned treatment programs and the progress he made in them, that is beyond his control because the programs were cancelled or revised while he was attempting to complete them and his records of participation were taken away when a personal thumb drive was confiscated from him; and (5) finally, he subjectively "believes he no longer poses a danger to the health and safety of others, in that it is not likely that he will engage in sexually violent criminal behavior if released to a less restrictive treatment alternative and environment."

4

The trial court denied Oliver's petition for three reasons: (1) he initiated the proceeding pro se, even though he had counsel, McEntee, and therefore had no right to file a section 6608 petition on his own; (2) he failed to serve his petition on the DSH pursuant to section 6608, subdivision (a); and (3) his petition is frivolous because "any reasonable attorney . . . would agree that [it] is totally and completely without merit."

This appeal followed.

## II.

The trial court was incorrect to deny Oliver's petition because he filed it pro se. It may well be that, if a committee is *currently* represented by counsel of record in connection with his commitment status, he would be barred from filing an action independent of that attorney, which is what occurred in the case the trial court relied upon to support denial on this ground, albeit in the context of capital litigation. (See *In re Barnett* (2003) 31 Cal.4th 466, 469.) But because in this case Oliver sought conditional release for the first time nine years after a commitment trial in which he was represented by appointed counsel, it is not reasonable to infer continuing representation from the fact that he still knew that attorney's address, and served him. As Oliver puts it, "[a] trial attorney who accepts an appointment to defend against an initial commitment does not consent to a lifetime appointment should the person be found an SVP and sent to the state hospital for an indeterminate commitment."

But neither that error nor the defect in service (which Oliver does not contest) is material. The third ground for denial—the trial court's conclusion that the petition was frivolous—is sufficient to justify affirmance. As a preliminary matter, the parties disagree on the appropriate standard of appellate review. Citing *People v. Olsen, supra,* 229 Cal.App.4th at page 994,

and *People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1408, the DSH contends our review should be for abuse of discretion, while Oliver contends we should conduct a de novo review, giving the trial court's determination no deference. According to Oliver, there is lack of clarity in the case law on this specific question, with some courts deciding the issue without any clear indication of the applicable standard of review (*People v. Smith* (2013) 216 Cal.App.4th 947, 951), and some reviewing for abuse of discretion (*People v. Olsen, supra,* 229 Cal.App.4th at p. 994) or for substantial evidence (*People v. Rasmuson* (2006) 145 Cal.App.4th 1487, 1504). By analogy to a variety of other procedural settings, Oliver contends we must review the trial court's summary denial of his petition by drawing inferences for him and evaluating the question independently.[3]

This preliminary skirmish over the intensity of review is academic. We see no need to choose from among the various standards cited by the parties because, under any standard, the trial court's determination that Oliver's

---

[3] "De novo is the standard of review for orders that summarily deny habeas petitions," Oliver argues, citing *In re Webb* (2018) 20 Cal.App.5th 44, 48. He also points to section 388 petitions in dependency proceedings (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1416), demurrers (*Filet Menu, Inc. v. Cheng* (1999) 71 Cal.App.4th 1276, 1279), anti-SLAPP dismissal motions (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 824, overruled on another ground, *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5), summary judgment motions (*Planned Parenthood Golden Gate v. Garibaldi* (2003) 107 Cal.App.4th 345, 352), and nonsuit motions (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 42–43), "all [of which] involve decisions as to whether a case should go forward to a full hearing." According to Oliver, in all of these procedural settings courts must "liberally construe the pleadings or facts, reflecting a policy favoring a full hearing on the merits. And all are treated as presenting questions of law requiring de novo review by the appellate court."

petition is frivolous must be affirmed. The governing rule is an objective one. A petition is frivolous if, to any reasonable attorney, it is totally and completely without merit. (*People v. Collins* (2003) 110 Cal.App.4th 340, 349; see *People v. McKee* (2010) 47 Cal.4th 1172, 1192, citing *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Whether the standard of review is abuse of discretion, substantial evidence, or de novo, we conclude that on this record no reasonable attorney would believe that Oliver's petition is anything but totally and completely without merit.

Oliver claims his petition made a facially sufficient showing that he was entitled to relief. We disagree. Oliver alleges nothing that calls into question Dr. Vorwerk's opinion that he currently remains a sexually violent predator, that he currently poses a danger to the health and safety of others, and that, if released to a less restrictive treatment alternative environment, he is likely to engage in sexually violent behavior. (*People v. Reynolds*, *supra,* 181 Cal.App.4th at p. 1411 ["petition neither alleged, nor did it otherwise demonstrate, that [petitioner] is no longer an SVP"].) There is virtually nothing, alleged or submitted by attachment, to supply grounds for relief. (Cf. *ibid.* ["[a] court is not compelled to grant a hearing where there is only slight evidence to support defendant's petition"].) Oliver's personal opinion disagreeing with Dr. Vorwerk is insufficient as a matter of law.

The thrust of Oliver's argument contesting summary denial for frivolousness is that the court conflated the threshold frivolousness determination with the ultimate merits determination that may only be made after a hearing. Emphasizing that an "annual report" under section 6604.9, subdivision (b) must be in the form of a declaration, he argues that the court relied improperly on a detailed document entitled "Coalinga State Hospital Annual Evaluation" (the Annual Evaluation) that comprehensively reviews

7

his criminal history, lack of cooperation and commitment to treatment while at DSH-Coalinga, history of disciplinary actions for violation of rules and aggressive and offensive conduct toward staff, and failure to complete many of the programs he claims to have "endured" while participating "enthusiastic[ally]" in them. According to Oliver, the Annual Evaluation is not part of the Vorwerk Declaration, was improperly considered as part of the court's assessment of frivolousness, contains a great deal of inadmissible hearsay and other objectionable evidence, and serves only to underscore that the court strayed beyond an assessment of frivolousness, weighing disputed facts that he was entitled to contest at a hearing.

The Annual Evaluation is dated the same day as the Vorwerk Declaration (April 26, 2018), is file-stamped as a certified copy of a record kept by the Coalinga State Hospital, and in its introductory line lists the "Welfare & Institutions Code (WIC) § 6604.9 Sexually Violent Predator (SVP), Annual Report to the Court" as the "Reason for Review." The document was included as one of two attachments with a cover letter from the medical director of DSH-Coalinga to the trial court dated June 7, 2018, stating, "[p]ursuant to Section 6604.9 of the Welfare & Institutions Code, enclosed please find Coalinga State Hospitals, SVP, and Annual Report to the Court . . . which provides information on background, diagnoses, treatment, and current mental status." The fact that the Annual Evaluation was forwarded to the court along with the Vorwerk Declaration and that the cover letter refers to both documents as a single "report" plainly suggests that the Annual Evaluation is an attachment to the Vorwerk Declaration, even though the declaration does not use the magic words of incorporation by reference.

8

Oliver nonetheless insists that the Annual Evaluation is not, in fact, part of the Vorwerk Declaration and should never have been considered in assessing frivolousness. But whether or not that is accurate as a matter of form, we reject the argument because the Vorwerk Declaration, standing on its own, without considering the details in the Annual Evaluation, is sufficient to warrant the conclusion that Oliver still meets the statutory definition of SVP (§ 6600, subd. (a)(1)) and is not entitled to conditional release (§ 6608, subd. (g)). Putting aside the trial court's reliance on facts stated in the Annual Evaluation since we, of course, may affirm on any available ground, Oliver still alleges little more than his own subjective opinion to call Dr. Vorwerk's opinion into doubt. He devotes a great deal of attention to the issue of whether he did or did not cooperate in treatment, and to the fact that several of the treatment programs in which he participated appear to have been abruptly revised or withdrawn midstream, thus frustrating his ability to complete all of the programs available to him, but that is beside the point. Whatever the reasons Oliver has not progressed further in treatment than he has, and whatever his level of desire to have access to more or better treatment, Dr. Vorwerk's opinion that "adequate protection [of] the community cannot be assured in a less restrictive treatment setting" stands unrebutted, except for Oliver's self-serving opinion to the contrary.

Oliver cites and relies upon cases where summary denials of section 6608 petitions were reversed, but in each of those cases the petitioner came forward with some affirmative evidence other than his own opinion that he had made or was making sufficient progress in treatment so that there was at least an arguable case to be made for conditional release. (*People v. Smith*, *supra*, 216 Cal.App.4th at p. 951 [psychologist opined that appellant" 'has

9

made significant progress in treatment,' " and provided that ongoing treatment programs are completed and testing indicates " 'an acceptable measurement of sexual arousal, indicating non-deviant sexual arousal, . . . he COULD be adequately treated and managed in a less restrictive treatment setting providing there is adequate supervision and treatment available' "]; *People v. Collins, supra,* 110 Cal.App.4th at p. 351 [report of treating psychiatrist attached to petition stated " '[Collins] is in Phase III and on antiandrogen treatment[,] [h]is determination to continue antiandrogen medication even in the face of his physical problems is very strong [and] [i]t is my opinion that his risk is greatly reduced and can be managed in the community,' " along with "sworn declaration of his counsel" stating inter alia that "at least two representatives of Collins's treatment team would be prepared to provide affidavits or appear at the hearing to testify of their belief he could be managed safely in the community if released under appropriate conditions"].)  These cases are readily distinguishable.  Nothing remotely similar was pleaded or attached to Oliver's petition.

Oliver complains that, having decided to deny the petition on procedural grounds—both because he filed it pro se, and because he failed to serve it on the DSH—the trial court proceeded improperly to the issue of frivolousness.  He contends that the appropriate disposition, which he now asks us to order on appeal, was to deny the petition without prejudice, appoint counsel, and allow him to attempt to cure any facial or procedural defect in the petition.  But this presupposes Oliver was entitled to an appointment of counsel, on demand, without clearing the non-frivolousness threshold.  That is incorrect.  First, he had to demonstrate entitlement to a hearing, and only then was he entitled to appointment of counsel (§ 6608, subd. (a)) and other representational assistance (§ 6608, subd. (g) [at a

10

hearing on a section 6608 petition "[t]he committed person shall have the right to the appointment of experts, if he or she so requests"]). He now makes much of the unfairness of being placed in a position where he was forced to respond not only to Dr. Vorwerk's opinion but to all of the detail in the Annual Evaluation, without assistance. But under section 6604.9, subdivision (a), a committee "may retain or, if he or she is indigent and so requests, the court may appoint, a qualified professional person to examine him or her."

As a last resort, Oliver argues due process. Pointing out that "[b]ecause civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections" (*People v. Otto* (2001) 26 Cal.4th 200, 209), Oliver contends it was a violation of due process for the court to decide the issue of frivolousness in circumstances where his petition was subject to denial on procedural grounds, without the guidance of counsel. On this record, he contends, he was entitled to the benefit of counsel to address the issue of frivolousness, since only a lawyer would have been in a position to object to and otherwise deal with what he contends are a raft of disputed evidentiary matters in the Annual Evaluation.

We are not persuaded. The courthouse doors were open to him, and going forward remain open to him. Under section 6608, Oliver had, and during his commitment he will always have, the right to file a petition seeking conditional release without the concurrence of the director of the DSH. He may, but he need not, proceed pro se, but could encounter the same problem he did in this case if he bases his petition only on his subjective belief he is entitled to relief. Under section 6604.9, subdivision (a), he has the right to retain an expert, or upon a showing of indigency to request discretionary appointment of an expert. And once he makes the minimal

11

threshold showing of entitlement to a hearing, he is entitled to appointment of a lawyer as well as an expert.  Here, the court entertained a section 6608 petition from Oliver supported almost entirely by his own view that he meets the criteria for conditional release; the court issued a written decision denying the petition as frivolous, among other reasons; and Oliver had a right to appeal, which he is now exercising.  We see no basis for any claim he received something less than the process to which he was constitutionally due.[4]

## Disposition

The trial court's ruling is affirmed.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
TUCHER, J.

---

[4] Even assuming Oliver could make out the basis for a due process claim, he can show no prejudice because we uphold the frivolousness determination, and thus the denial, on the face of the petition considered together with the Vorwerk Declaration.  There is no reason to believe that, on this record, an attorney might have cured the substantive deficiencies in Oliver's pro se petition in light of the then most recent section 6604.9, subdivision (b) annual report.