Filed 4/28/21  Shtofman v. Ivoko CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT SCOTT SHTOFMAN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BERNICE CHINYERE IVOKO,<br><br>Defendant and Appellant. | B295469<br><br>Los Angeles County<br>Super. Ct. No. BC538187 |

APPEAL from orders and judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Affirmed.

Law Office of George E. Omoko and George E. Omoko for Defendant and Appellant Bernice Chinyere Ivoko.

Law Offices of Robert Scott Shtofman, Robert Scott Shtofman; Law Offices of Richard M. Chaskin and Richard M. Chaskin for Plaintiff and Respondent.

In 2010 and 2011, attorney Robert Scott Shtofman represented Bernice Chinyere Ivoko in a civil lawsuit, resulting in a million-dollar jury verdict in her favor and the award of control over a partnership. Ivoko did not pay Shtofman's attorney fees. Shtofman sued Ivoko, and a jury awarded him $271,600. Ivoko appeals, and we affirm.

## BACKGROUND

Beginning November 6, 2010, Shtofman represented Ivoko, the plaintiff in a Riverside County lawsuit over ownership and control of a partnership business providing home health care (the partnership case). Shtofman was Ivoko's third attorney. After 25 court days of trial, on March 7, 2011, the jury awarded Ivoko $1,008,067.59, including $400,000 in punitive damages and $27,067.59 in costs. In the second phase of the partnership case, after a bench trial, the trial court awarded Ivoko control over the partnership's finances. Shtofman represented Ivoko until September 12, 2011.

After Ivoko did not pay Shtofman for his work, he sued her, filing his initial complaint on March 4, 2014. Shtofman filed a second amended complaint (SAC) on April 29, 2016, alleging breach of written contract, open book account, fraud, avoidance of fraudulent transfer, and quantum meruit. The complaint alleged Ivoko owed Shtofman $334,841.03 in attorney fees plus prejudgment interest for breach of contract under the terms of a written retainer agreement specifying $250 an hour, and $649,291.03 under his claim for quantum meruit as the reasonable value of his services, at his regular hourly rate of $500. Shtofman requested general and special damages, costs, and punitive damages on the fraud causes of action. Ivoko's

2

answer alleged she agreed to pay Shtofman $45,000 for his work on the partnership case.

Ivoko filed a motion for judgment on the pleadings, and on April 21, 2017, the trial court granted the motion on the fraud cause of action.

Ivoko filed a motion for summary judgment and summary adjudication. On September 5, 2017, the trial court granted summary adjudication on Shtofman's causes of action for breach of contract and fraudulent transfer. The trial court denied summary adjudication on the causes of action for open book account and quantum meruit, concluding triable issues of fact existed regarding the tolling of the two-year statute of limitations.

Shtofman filed a motion for monetary, issue, and/or terminating sanctions against Ivoko and her counsel George Omoko for discovery abuse, including their obstructive conduct during Ivoko's June 27, 2017 deposition. On September 27, 2017, the court awarded $8,014.45 in joint monetary sanctions against Omoko and Ivoko. The court appointed a discovery referee for the resumption of Ivoko's deposition in 45 days, with Shtofman's counsel to give notice.

On March 20, 2018, Shtofman filed an ex parte application to compel the resumption of Ivoko's deposition. The trial court granted the application and ordered Ivoko to appear for her deposition and to produce documents on April 18, 2018, with Shtofman's counsel to give notice. Trial was set for April 24.

Ivoko did not appear for her April 18 deposition. On April 24, the trial court heard argument on Shtofman's April 20 motion for sanctions, and set an evidentiary hearing for May 4 to consider whether to impose nonmonetary sanctions. In an

3

order filed May 7, 2018, the court found Shtofman and Ivoko shared fault and declined to impose terminating or evidentiary sanctions. The court ordered Ivoko's deposition within 45 days, with Ivoko and Omoko jointly to pay the costs incurred on April 18 and the costs of the continued deposition.

Shtofman filed a motion for reconsideration. At the trial setting conference on August 1, 2018, the court found Shtofman had spent almost two years trying to complete Ivoko's deposition. Despite the monetary sanctions imposed in September 2017, Ivoko and Omoko further abused the discovery process when Ivoko failed to appear for her April 18, 2018 deposition. Although Shtofman did not serve Ivoko with notice of the court's ruling, Omoko was present in court and was fully aware of the order setting the deposition for April 18. Omoko ignored a notice of deposition served on April 9 and emails from counsel and the discovery referee, and did not object to irregularities in the deposition notice. The court imposed issue sanctions barring Ivoko from presenting any evidence concerning her statute of limitations defense. Because that defense was the primary reason to depose Ivoko, the court did not order the deposition to resume.

After trial, on December 14, 2018, the jury found in favor of Shtofman on his claims for open book account and quantum meruit, awarding him $271,600. Ivoko filed this timely appeal.

## DISCUSSION

Ivoko's sprawling brief raises many issues, which we distill as follows.

1.  ***The trial court properly denied the motion for judgment on the pleadings***

Ivoko argues the trial court erred when it denied her motion for judgment on the pleadings on Shtofman's cause of action for quantum meruit. The motion argued the claim was barred by the two-year statute of limitations and by Shtofman's incorporation of an express written agreement between Shtofman and Ivoko (the retainer agreement) in his breach of contract claim. On April 21, 2017, the trial court denied Ivoko's motion as to this cause of action. Shtofman had properly alleged tolling, and the court had already rejected the argument regarding the incorporation of the retainer agreement when it ruled on Ivoko's demurrer to the first amended complaint. Shtofman could plead alternative causes of action, and could recover under quantum meruit if the retainer agreement was not an enforceable contract.

An order denying a motion for judgment on the pleadings is not itself an appealable order, but an appeal from the order may be taken from the ultimate judgment, if the order necessarily affects the judgment or substantially affects the rights of a party. (*Estate of Dayan* (2016) 5 Cal.App.5th 29, 38-39.) Here the trial court denied Ivoko's motion for judgment on the pleadings on the claim for quantum meruit based on her statute of limitations defense. The order denying judgment on the pleadings necessarily affected the judgment and substantially affected Ivoko's rights. If Ivoko had prevailed on her motion for judgment on the pleadings, the remaining claims on which Shtofman prevailed after trial would have been dismissed before the trial court imposed issue sanctions barring her from asserting the defense at trial.

We review the order denying the motion for judgment on the pleadings de novo, treating the pleadings as admitting all material facts properly pleaded and considering evidence outside the pleadings that the trial court considered without objection. (*Estate of Dayan*, *supra*, 5 Cal.App.5th at pp. 39-40.)

As the trial court stated, Shtofman's SAC included tolling allegations on the quantum meruit claim. The SAC alleged Ivoko was out of state for one or more days between November 13, 2010 and November 13, 2013, and under Code of Civil Procedure section 351,[1] the statute of limitations was tolled for each day that she was gone from California. The trial court correctly pointed out (as we explain below) that, should it find the written retainer agreement incorporated into the contract claim was unenforceable, Shtofman could recover under quantum meruit. The trial court properly denied Ivoko's motion for judgment on the pleadings as to the quantum meruit claim.

**2.** ***The trial court properly denied summary judgment/ adjudication***

Ivoko filed a motion for summary judgment/adjudication in which (among other arguments) she argued the claims for quantum meruit and open book account were barred by the two-year statute of limitations and by the incorporation of the retainer agreement in the breach of contract claim. On September 5, 2017, the trial granted summary adjudication on Shtofman's breach of contract claim. Undisputed evidence showed he failed to comply with subdivision (b) of Business and Professions Code section 6148, which requires an attorney to provide a bill upon the client's request within certain time limits,

---

[1] All the statutory references that follow are to the Code of Civil Procedure, unless otherwise stated.

6

and so the written retainer agreement was voidable. But the court denied summary adjudication of the claims for quantum meruit and open book account, concluding evidence of Ivoko's absences from the state of California and the arbitration between Shtofman and Ivoko created triable issues of fact whether the limitations period had been tolled.

An order denying summary adjudication is not itself appealable, but may be reviewed on direct appeal of a final judgment after trial if the appellant shows the ruling prejudiced her. (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343 (*FDIC*).) The order results in prejudicial error if the issues raised in the motion and denied summary adjudication are not addressed at the subsequent trial. (*Ibid.*) Here the trial court imposed issue sanctions before trial which entirely barred the statute of limitations defense, so the question was not addressed on the merits and decided adversely to Ivoko. "[I]t is properly before us because it was not revisited at trial." (*Diaz v. Grill Concepts Services, Inc.* (2018) 23 Cal.App.5th 859, 867.) Ivoko's defense that the existence of the written retainer agreement barred the quantum meruit claim also was not revisited at trial, and so the denial of summary adjudication on that basis also is properly before us.

We review de novo, " 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' " (*FDIC*, *supra*, 167 Cal.App.4th at p. 345.)

a. *Incorporation of retainer agreement*

Ivoko argues that because Shtofman incorporated the written retainer agreement into his claim for breach of contract,

the court erred when it denied summary adjudication on the quantum meruit claim.

The trial court granted summary adjudication on the breach of contract claim because Shtofman violated Business and Professions Code section 6148, subdivision (c): "Failure to comply with any provision of this section renders the agreement voidable at the option of the client, *and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee.*" (Italics added.)

Quantum meruit is an equitable doctrine "that has sometimes been applied to allow attorneys 'to recover the reasonable value of their legal services from their clients when their fee agreements are found to be invalid or unenforceable.' " (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 88; see *Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 462.) Recovery is barred if the entire contractual fee arrangement was prohibited by statute or public policy, or a conflict of interest or an ethical violation pervaded the whole relationship. (*Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1150-1151, 1162.) That is not the case here.

Ivoko cites *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1388, which held "[a] plaintiff may not, however, pursue or recover on a quasi-contract claim if the parties have an *enforceable* agreement regarding a particular subject matter." (Italics added.) Here, the trial court found the retainer agreement was not an enforceable contract when it granted summary adjudication on Shtofman's breach of contract claim.

The incorporation of the retainer agreement into the breach of contract claim did not require the trial court to grant summary judgment on the quantum meruit claim.

### b. *Two-year statute of limitations*

In its order, the trial court agreed with Ivoko that Shtofman's quantum meruit claim arose when the attorney-client relationship ended on September 12, 2011,[2] as alleged in the SAC, and he was subject to a two-year statute of limitations under section 339. 894 days elapsed before Shtofman filed the initial complaint on March 4, 2014, requiring 164 days of tolling to avoid the statute of limitations bar. Section 351 tolls the limitations period while Ivoko was out of state. She conceded she was out of state for 52 days (from December 2011 to January 2012, and December 2012 to January 2013). Her passport also showed she left the country on October 25, 2013. When Shtofman requested in discovery her travel itineraries and airline tickets after December 1, 2010, Ivoko responded some documents were no longer in her possession. She believed documents for the period between October 25, 2013 and September 2014 were in the custody and control of Singapore Airlines, Tom Bradley International Terminal, Southwest Airlines, and US Airways. She thus conceded she had traveled

---

[2] The trial court's order also gave the date of accrual as September 22, 2011, as Ivoko argued in her reply to Shtofman's opposition: "[T]he attorney-client relationship ended on September 12, 2011, as alleged by Shtofman himself, or no later than September 22, 2011, as successfully urged by Shtofman and accepted by the Court . . . . It does not require a rocket scientist to know that Shtofman's action commenced March 4, 2014, was more than two years from September 12, 2011, or September 22, 2011."

9

out of state between October 25, 2013 and September 2014, and she did not produce evidence about her return. The trial court found this created triable issues of fact about when Ivoko was out of state, and how far out those absences tolled the statute of limitations.

Shtofman also submitted evidence of a petition for arbitration of fee disputes he served on Ivoko on November 22, 2013, and a demand for arbitration Ivoko served on him on December 19, 2013. Business and Professions Code section 6206 tolls the statute of limitations period "from the time an arbitration is initiated . . . until (a) 30 days after receipt of notice of the award of the arbitrators, or (b) receipt of notice that the arbitration is otherwise terminated, whichever comes first." The trial court concluded the fee arbitration also created a triable issue of fact about the tolling of the limitations period.

i. *Tolling during arbitration*

Ivoko argues the SAC did not allege that arbitration tolled the limitations period, and Shtofman "may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings." (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3.) Instead, Shtofman was required to move to amend the complaint.

The SAC alleged Ivoko was out of California for one or more days between November 13, 2010 and November 13, 2013, tolling the statute of limitations. The complaint also alleged Shtofman had hand-delivered to Ivoko on November 22, 2013 a letter notifying her of her right to arbitration, as required by Business and Professions Code section 6201, and alleged Ivoko waived her right to arbitration by not requesting it within 30 days.

10

But Ivoko did petition for non-binding arbitration. In support of her motion for summary judgment she requested the court take judicial notice of a September 28, 2015 statement of decision and award, and in her declaration she described statements Shtofman made during the arbitration, which she used in her separate statement as the basis for two of her undisputed facts.

In opposition, Shtofman's counsel Richard Chaskin attached to his declaration Ivoko's "Client Petition for Arbitration," filed December 19, 2013, and pointed out that statements made in non-binding arbitration were not properly before the court. Shtofman's declaration stated the arbitration tolled the statute of limitations from December 19, 2013 through March 27, 2015.[3] Shtofman's separate statement of disputed material facts cited the petition as creating a material question whether the arbitration tolled the two-year statute of limitations.

Ivoko objected on the bases of legal conclusion and opinion, lack of factual foundation, and hearsay. She also argued that Shtofman's SAC never alleged arbitration as a basis for tolling and he never sought leave of court to amend his pleadings, and also opposed on the merits. She has not waived this issue.

The pleadings set the boundaries of the issues that can be resolved at summary judgment. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648.) A plaintiff cannot bring up new or unpleaded issues in opposition, and may not create immaterial factual conflicts outside the scope

---

[3] The SAC incorporates into the quantum meruit claim paragraphs 1-22. Shtofman's declaration stated that was a typo, and he requested leave to amend to incorporate paragraphs 1-23. Paragraph 23 includes the tolling allegations.

of the pleadings.  (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.)  The defendant moving for summary judgment is required only to "negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings."  (*Ibid.*)  If the opposing party's evidence shows a factual assertion, legal theory, defense, or claim not yet pleaded, then she should move for leave to amend the pleadings before the hearing on the summary judgment motion.  (*Johnson v. The Raytheon Co., Inc.* (2019) 33 Cal.App.5th 617, 636.)

But the opposing party may allege additional facts or issues when the complaint encompasses those allegations.  "A new factual issue may be presented in conjunction with motions for summary judgment so long as the theory is encompassed by the controlling pleading, construed broadly.  [Citation.]  If the new issue is not encompassed in the original pleading, the trial court should readily allow amendments to the original pleadings."  (*Cavalry SPV I, LLC v. Watkins* (2019) 36 Cal.App.5th 1070, 1084.)  "In making this determination, courts look to whether the new factual issues present different theories of recovery or rest on a fundamentally different factual basis."  (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1257.)

Here, Shtofman's SAC alleged Ivoko's absences from California tolled the statute of limitations, and alleged that he served her with notice of her right to arbitration.  The complaint also stated that Ivoko did not petition for arbitration.  But its allegation that the statute of limitations was tolled by Ivoko's absences from California was sufficient to encompass tolling by the fee arbitration as well.  This is true given the broad construction we give to the pleadings, and especially as Ivoko

12

raised the issue of the fee arbitration in her motion for summary judgment. Ivoko's declaration included statements she claimed Shtofman made during mandatory fee arbitration, and on April 7, 2017 she requested the court take judicial notice of the county bar dispute resolution services arbitration statement of decision and award, certified on October 6, 2015. Shtofman referred to the arbitration in his April 19, 2017 opposition to Ivoko's motion for judgment on the pleadings regarding the statute of limitations, arguing the arbitration was relevant to show tolling.

In any event, we see no prejudice to Ivoko. The court's primary reason for denying summary adjudication was the existence of disputed material facts about Ivoko's travel out of California and the resulting length of the tolling period. Even without considering the factual issues around additional tolling based on the fee arbitration, as we discuss below, the court properly denied summary judgment on the statute of limitations defense.

ii.     *Tolling during out of state travel*

Ivoko argues the trial court "bought into [ ] speculation and guesswork" when it concluded triable issues existed about her absences from California. As described above, however, Ivoko's passport showed she left the country on October 25, 2013, and as she claimed to have lost or misplaced her subsequent travel records, material questions of fact existed as to how long she was out of California between then and September 2014.

Ivoko argues the trial court erred when it put the burden on her to show when she was out of state. But the trial court properly explained that when a defendant such as Ivoko moves for summary judgment, she has the burden to show the action has no merit, either by demonstrating one or more of the

13

elements of the cause of action "cannot be established, or that there is a complete defense." (§ 437c, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) If the defendant meets this burden, the onus shifts to the plaintiff to provide sufficient evidence to demonstrate the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); see *Aguilar,* 25 Cal.4th at p. 850.) Once the defendant establishes the existence of an affirmative defense, the burden on summary judgment shifts to the plaintiff to produce evidence establishing a triable issue of material fact refuting the defense. (*Mirzada v. Department of Transportation* (2003) 111 Cal.App.4th 802, 806-807.) "[T]he court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact. . . . [I]f the court concludes that the plaintiff's evidence or inferences raise a triable issue of material fact, it must conclude its consideration and deny the defendants' motion." (*Aguilar,* 25 Cal.4th at p. 856.)

Ivoko argues she was prejudiced when the trial court ignored her argument that her business travel to Chicago did not toll the statute of limitations because she was engaged in interstate commerce. She did not raise this issue in her motion for summary judgment, merely stating she was out of California for a total of 54 days during the two-year limitations period. In her supplemental reply to Shtofman's opposition, Ivoko for the first time argued "Shtofman failed to create a triable issue with regards to a single day of Ivoko's absence from California as justifying tolling." Ivoko owned businesses in California and Illinois, and under *Filet Menu, Inc. v. Cheng* (1999) 71 Cal.App.4th 1276 (*Filet Menu*), her travel was to facilitate interstate commerce and could not be counted for tolling.

14

*Filet Menu* held section 351, which allows tolling when a defendant is out of state, violated the Commerce Clause by placing a special burden on California residents engaged in interstate commerce that was not shared by residents engaged only in local business. Tolling the statute of limitations during their travel out of state to facilitate interstate commerce unfairly extended their exposure to litigation, without a corresponding benefit to the state. (*Filet Menu*, *supra*, 71 Cal.App.4th at pp. 1282-1283.) Nevertheless, the trial court improperly sustained a demurrer on that basis where the complaint did not allege the specific reasons for the out-of-state travel or how the travel was in the course of interstate commerce. (*Id.* at p. 1284.)[4]

When Ivoko raised the issue at the summary judgment hearing a week after she first raised it in her supplemental reply, the trial court responded: "You're asking me to make factual findings that basically as a matter of law she was traveling not for pleasure but for employment. And I'm not inclined to do that. That's for the jury to decide."

Ivoko raised this issue for the first time in her supplemental reply to the opposition to her summary judgment motion. She did not present evidence her travel out of California was to facilitate interstate commerce. (*Aguilar*, *supra*, 25 Cal.4th at pp. 865-866.) The trial court properly declined to consider her

---

[4] We note that Ivoko erroneously equates travel "to check on her business" with travel to facilitate interstate commerce. If Ivoko's business was not engaged in interstate commerce, her business travel would not be in the service of that commerce. (See *Heritage Marketing & Ins. Services, Inc. v. Chrustawka* (2008) 160 Cal.App.4th 754, 759-760.)

Commerce Clause argument in ruling on her summary judgment motion.

**3.** ***Substantial evidence showed Shtofman's fees and costs were reasonable and necessary***

Ivoko argues no substantial evidence showed Shtofman's attorney fees and costs were reasonable and necessary. The bulk of Ivoko's argument is three pages counting how many times the words "reasonable" and "necessary" appear in the trial transcript. This word count is irrelevant.

Under the substantial evidence test, we ask only whether, on the entire record, there is *any* substantial evidence (contradicted or uncontradicted) to support the jury's finding. (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822.) We resolve every conflict in the evidence in favor of the judgment. (*Id*. at p. 823.) Substantial evidence is evidence that is legally significant, reasonable, credible, and of solid value. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) The testimony of a single witness may constitute substantial evidence, and we defer to the jury's implicit finding of credibility. (*Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1376-1377.)

The party seeking recovery in quantum meruit does not have to prove the existence of a contract, and a lawyer may recover from his client the reasonable value of his legal services even when the fee agreement is invalid or unenforceable for other reasons. (*Huskinson & Brown v. Wolf, supra*, 32 Cal.4th at pp. 458, 461.) The starting point for determining a reasonable attorney fee is the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate, and the lawyer seeking fees should submit evidence of the hours worked and the fees claimed, although billing records are not required.

16

(*Madirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269, 272.)  The lawyer "seeking fees must also show the total fees incurred were reasonable.  Factors relevant to that determination include '[t]he nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure of the attorney's efforts, the attorney's skill and learning, including his [or her] age and experience in the particular type of work demanded.' " (*Id*. at p. 272.)

Shtofman attached as exhibits to his SAC the written retainer agreement, a work ledger of over 60 pages, and a lengthy bill of costs.  He testified at length about his extensive experience litigating civil cases with large awards, in Los Angeles and other California counties.  At the time he met Ivoko, judges generally awarded him $500 an hour, but at the request of a former co-counsel and mutual friend he had agreed to represent Ivoko at a reduced hourly rate of $250 plus costs.

When he took over the case, trial was about two months away, no depositions had been taken, and he had to review voluminous paper discovery and paperwork.  Shtofman drove back and forth to Riverside from his home office in Encino to prepare for and to litigate the 25-day trial, and he retained three other lawyers to work with him on the case.  He lost income from other cases while he worked solely on the partnership case and spent January through March in trial.

Ivoko testified Shtofman agreed to represent her in the partnership case for no more than $45,000, although she had nothing in writing.  Shtofman denied he agreed to the $45,000 cap on fees.  Ivoko's counsel examined Shtofman in detail about the reasonableness and necessity of the time he recorded.  Ivoko's

17

counsel asked whether individual items were "bill padding" because Shtofman billed for himself and for co-counsel when they both worked on the same task, and Shtofman explained attorneys often worked together and each would be paid. Ivoko's counsel asked about duplicative billing, which Shtofman denied, and questioned him at length about individual entries of fees and costs. Shtofman also testified he kept contemporaneous time billing records on his computer, including his starting and stopping times.

Richard Sullivan, named as co-counsel in the retainer agreement, testified he had practiced for over 25 years in California, and had worked with Shtofman on many civil cases including as an independent contractor on the partnership case. Although at the time his regular fee was $375 an hour, on the partnership case he billed Shtofman (who still owed him some fees) $250 an hour. Sullivan testified he heard nothing about a $45,000 cap on fees, and Shtofman was "a great attorney but he's not going to do free work." Another attorney who worked on the partnership case at Shtofman's direction testified his hourly rate was $350 but he charged Shtofman $250 an hour, understanding that $250 was the fee established between Shtofman and Ivoko. Shtofman had not paid him. Both attorneys testified the time shown for individual billing entries was necessary and reasonable, and both testified they assigned their rights to Shtofman so he could proceed on their behalf against Ivoko.

We have no authority to disturb factual findings supported by substantial evidence. (*Mikhaeilpoor v. BMW of North America, LLC* (2020) 48 Cal.App.5th 240, 255.) Viewing the record in the light most favorable to the jury's verdict, the record

18

demonstrates Shtofman took over a complicated partnership case only two months before trial began, and cut his customary hourly fee in half.  No depositions had been taken.  Shtofman, an experienced civil litigator, dedicated all his attention to the partnership case to the detriment of other cases, traveling back and forth from his home office in Encino to Riverside.  He worked with other lawyers who also reduced their usual hourly rates.  He kept detailed records of the time he spent on the case and testified the time was reasonable and necessary.  Shtofman's efforts were successful.  Not only did the jury award Ivoko a seven-figure verdict, including $400,000 in punitive damages, she also gained control over the partnership after a bench trial.  Substantial evidence supports the jury's award of attorney fees to Shtofman.[5]

## 4.      *The failure to give special jury instructions is waived*

Ivoko argues the trial court erred to her prejudice when it did not give her 16 proposed special jury instructions.  After the close of evidence, the court heard argument on the special

---

[5]      In her reply brief, Ivoko argues there was no substantial evidence to support the fee award because "none of the nine factors in [*Fergus v. Songer* (2007) 150 Cal.App.4th 552] were ever discussed and considered by the jury."  But it was Shtofman who proposed giving an instruction based on that case, and Ivoko opposed the instruction because the case involved a contingency fee.  The trial court eventually gave (over Shtofman's objection) an instruction approved by Ivoko's counsel and based on *Ketchum v. Moses* (2001) 24 Cal.4th 1122.  The instruction read:  "The most widely accepted approach for determining a 'reasonable' fee award is the 'lodestar' method.  The lodestar figure is calculated using the reasonable rate, multiplied by the reasonable number of hours spent on the case. [¶] In this case, the reasonable hourly rate may not exceed $250.00 per hour."

instructions.  The court declined to give the instructions, finding most of them argumentative.  But Ivoko makes no argument and cites no authority why the court should have given each of her proposed instructions, except to say her defense and evidence supported the instructions, and therefore the failure to give them was prejudicial.  An appellant " ' "asserting trial court error may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised." ' "  (*Hoffman v. Young* (2020) 56 Cal.App.5th 1021, 1029.)  Ivoko does not present reasoned arguments and citations to authority, so we treat the issue as waived.  (*Ibid.*)

**5.**     *Admission of exhibits to the SAC was proper*

Ivoko argues the trial court erred when it admitted Shtofman's exhibits 1 to 125.  Shtofman's counsel moved to admit the exhibits, and Ivoko's counsel objected to all of them as not produced in discovery.  The court admitted exhibits 5 (Shtofman's work ledger) and 6 (Shtofman's cost ledger), finding a proper foundation had been laid and the exhibits were attached to the SAC.  The court then proceeded to rule on the remaining exhibits, excluding some and admitting the bulk as court files.

Ivoko makes no argument regarding individual exhibits except exhibits 5 and 6, and we address only those exhibits.  Shtofman's ledgers of his work and his costs were relevant (Evid. Code, §§ 210, 350) to his quantum meruit claim.  The court may take judicial notice of court records.  (*Oh v. Teacher's Ins. & Annuity Assn. of America* (2020) 53 Cal.App.5th 71, 81.)  The court did not take judicial notice of the truth asserted in the documents.  (*Ibid.*)  It was not an abuse of discretion to allow the exhibits.

**6.**     *Monetary sanctions were not an abuse of discretion*

Ivoko argues it was an abuse of discretion to grant monetary sanctions jointly against Ivoko and Omoko.

On September 5, 2017, Shtofman moved for monetary, issue, and/or terminating sanctions, or in the alternative for the appointment of a discovery referee.  The motion detailed Ivoko's failure to comply with a court order in August 2016 to appear for her deposition and provide requested discovery within 30 days, and her failure to appear for a second noticed deposition on June 5, 2017.  When she did appear for deposition on June 27, 2017, her counsel Omoko constantly interrupted, interfered with the deposition, and insulted Shtofman as he attempted to examine Ivoko, who gave evasive and incomplete responses, and did not produce requested documents.  On September 27, 2017, the court agreed that Omoko repeatedly interrupted and interfered with the deposition, raised meritless objections, and instructed Ivoko not to respond to questioning, and Ivoko failed to produce requested documents.  "While this is certainly sanctionable conduct, it does not rise to the level of issue or terminating sanctions."  The court imposed a total of $8,014.45 in monetary sanctions jointly and severally against Ivoko and Omoko and appointed a discovery referee.

Section 2025.450 authorizes the trial court to impose monetary, issue, or terminating sanctions if a party deponent such as Ivoko does not appear for her deposition, does not proceed with the deposition, or fails to produce documents.  "In choosing among its various options for imposing a discovery sanction, a trial court exercises discretion, subject to reversal only for manifest abuse exceeding the bounds of reason." (*Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988.)

21

Shtofman provided numerous examples of Omoko's obstructive conduct, his verbal attacks on Shtofman and his counsel, and Ivoko's evasive responses about when she was out of the country, about her original passport (the copy she produced was illegible), and about her petition for arbitration. Shtofman detailed his requests for production at the deposition and Ivoko's failure to comply. The court did not abuse its discretion when it chose to impose the lesser option of monetary sanctions.

## 7. *Issue sanctions were not an abuse of discretion*

Ivoko argues the later issue sanctions barring the statute of limitations defense were also an abuse of the court's discretion.

On March 20, 2018, after hearing from counsel, the trial court granted Shtofman's ex parte application to compel, ordering Ivoko to appear for the resumption of her deposition and to produce documents on April 18, 2018, with Shtofman to give notice. Ivoko did not appear for her deposition on April 18.

The trial court held a full evidentiary hearing on issue and terminating sanctions on May 4, during which Shtofman presented testimony Omoko had been personally served with the notice of deposition. The court issued its order on May 7, detailing the disputes around the service of the notice (which we need not detail here) and Omoko's failure to respond to emails from Shtofman and the discovery referee the day before the scheduled deposition. The court ordered Ivoko's deposition within 45 days, and ordered Omoko and Ivoko to pay jointly for all expenses associated with the April 18 deposition. But the court concluded Shtofman and Omoko "share fault in Ivoko's deposition not going forward on April 18, 2018," and denied the request for issue or terminating sanctions.

22

Shtofman moved for reconsideration, arguing Ivoko's discovery misconduct was persistent and flagrant. Three times, she failed to appear for her deposition and failed to produce documents. Twice, she failed to appear for a court-ordered deposition and failed to produce documents as ordered. Counsel Omoko was present when the court ordered Ivoko to appear for her deposition on April 18, so whether Shtofman served the notice of deposition nine or 10 days in advance was immaterial. It was an abuse of discretion not to order terminating or issue sanctions. Omoko filed an opposition and asked for monetary sanctions against Shtofman.

In a detailed order on August 1, 2018, the trial court agreed with Shtofman that issue sanctions were warranted. Ivoko spent two years avoiding her deposition, preventing Shtofman from discovering evidence about her statute of limitations defense. "Ivoko and counsel Omoko have abused the discovery process, and monetary sanctions have failed to deter their behavior. However, the court feels that terminating sanctions would be unduly harsh, especially since much of the abuse was the result of counsel Omoko's actions. The court, however, finds that evidentiary and/or issue sanctions are warranted, and as such, Ivoko will be barred from presenting any evidence concerning her statute of limitation defense."

On appeal, Ivoko repeats her argument in opposition that Shtofman did not comply with section 1008's requirements for a motion for reconsideration. But the court also stated: "Assuming for argument sake that plaintiff's motion to reconsider is filed in violation of [section 1008], the court has inherent power to correct its own errors when they are called to the court's attention." The trial court had the power to correct its prior

23

interim order, with proper briefing by the parties.  (See *Montegani v. Johnson* (2008) 162 Cal.App.4th 1231, 1238.)

Ivoko's statute of limitations defense depended on information about her travel out of California that was uniquely in her possession.  Because Ivoko refused to produce necessary documents and to cooperate when she appeared for her depositions, Shtofman could not ascertain whether her absences tolled the two-year period sufficiently to make his lawsuit timely.  She prevented Shtofman from conducting discovery about this threshold issue, and it was not an abuse of discretion to prevent her from asserting the defense at trial.  (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1218-1219.)

**8.** ***The interest calculations were proper***

Ivoko's final argument is that the court erred in its interest calculations on the judgment from five orders against her for discovery sanctions.  The judgment was filed and signed by the court on April 27, 2018, and calculated interest from the date of the initial date of each of the five discovery sanctions orders until April 25, 2018.  Thereafter, interest was to be calculated daily.  Ivoko filed a "Disapproval and Opposition" on May 21, 2018, arguing Shtofman was not entitled to any interest before the court signed the judgment.  On May 22, the court declined to change the order, because a discovery sanction order is enforceable in the same way as a money judgment.  The court distinguished *Hyundai Motor America v. Superior Court* (2015) 235 Cal.App.4th 418, cited by Ivoko, because that case did not involve a discovery sanction order.

On appeal, we also reject this argument.  Monetary sanctions orders have the force and effect of a money judgment, and are immediately enforceable through execution unless

24

the court orders a stay.  (*Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 615.)  Ivoko again cites *Hyundai* for the proposition that a money award does not accrue postjudgment interest until a final judgment is entered, but that case did not involve an award of monetary sanctions.

## DISPOSITION

The orders and the judgment are affirmed.  Costs are awarded to Robert Scott Shtofman.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

SALTER J.[*]

---

[*]     Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.